The STATE of Ohio, Appellee,

v.

BROWN, Appellant.

[Cite as *State v. Brown* (1993), 90 Ohio App.3d 674.]

Court of Appeals of Ohio,
Portage County.

No. 92–P–0055.

Decided July 12, 1993.

*David W. Norris*, Portage County Prosecuting Attorney, and *Eugene L. Muldowney*, Assistant Prosecuting Attorney, for appellee.

*James Alexander, Jr., Dea L. Character–Floyd* and *Lawrence R. Floyd*, for appellant.

FORD, Presiding Judge.

This appeal comes from the Portage County Municipal Court, Ravenna Branch, where appellant, Sherdene A. Brown, was found guilty on one count of complicity to hazing, and one count of complicity to assault. Appellant timely appeals her conviction. The underlying facts, although lengthy, will be stated in abbreviated form at this juncture.

From February 4, 1991 through April 8, 1991, the Epsilon Gamma Chapter of Alpha Kappa Alpha Sorority, Inc. ("AKA") at Kent State University ("KSU") conducted an underground pledge "line," which is the traditional, but now unpermitted, process of pledging candidates in the black Greek system. As of 1990, the National AKA Sorority eliminated their formal pledging process and substituted a Membership Intake Process consisting of seventy-two hours of workshops and an initiation ceremony only. In accordance with AKA bylaws, sanctions would be instituted for those members who pledge a line according to the "old school" tradition as in the instant case.

Appellant, a twenty-six-year-old black woman with a bachelor's degree from KSU, was, at this time, a graduate student, and had agreed to assist in pledging this new "line."

The pledges were taken through several stages: the pre-pledge period (February 4 through February 8), the Ivy stage (February 8 through February 24), and the Goddess stage (April 1 through April 8). These stages included, but were not limited to, activities such as history lessons, stepping (line dancing) lessons, projects, tasks, skits, and sisterhood tests, and culminated with increasingly severe physical discipline with each successive stage.

This "physical discipline," which took place primarily during the Goddess stage, is the activity at issue in this appeal, and consisted of open-handed smacks or slaps to the face and hands, pushes to the shoulders, punching, and finally paddling (a.k.a. "taking wood").

Various past and present AKA pledges, some of whom became members, testified to incidents of the following severe discipline, which appellant either inflicted upon the pledges herself, or actively coerced: nosebleeds after being forced to stand on their heads, passing out after being struck in the temple, a black eye after being smacked, getting "knocked out" after receiving a bloody nose, and sustaining bruised and bleeding buttocks after being paddled anywhere between twelve and one hundred plus times with a special paddle called "the enforcer." The enforcer was a wooden paddle wrapped with silver duct tape.

During the most intense week, the Goddess stage, the members had arranged to meet the pledges in Kent, Ohio, where some physical discipline took place. They then drove the pledges to Cleveland, Ohio, for the most severe paddling sessions. The testimony adduced at trial indicated that appellant was present for and either administered or assisted in administering the paddlings despite the fact that the pledges' buttocks bled through their clothes, and despite their complaints about the severity of the beatings.

As a result of these paddlings, two of the pledges received permanent scars which cannot be corrected by reconstructive surgery. In addition, several pledges testified that they were "encouraged" not to drop out of the pledging process, and were offered promises of lighter discipline in exchange for staying in. One pledge was told not to visit a doctor because the visit would be documented, while another was forced by appellant to make a pledge of secrecy so as not to "get hurt."

Appellant admitted her awareness that the paddling, if not done correctly, was very dangerous and could cause injury to the legs or back. She also admitted that she was aware of scarring on other past pledges. She contends, however, that she did not intend to hurt anyone, and was merely carrying out the time-honored traditions that had been taught and done to her. She was apparently told that surviving this process was the only way for a black woman to gain respect among her peers in the community.

On December 24, 1991, a Portage County Grand Jury indicted appellant on one count of complicity to assault in violation of R.C. 2923.03(A)(2) and 2903.13(A) and (C), a misdemeanor of the first degree, and one count of complicity to hazing under R.C. 2923.03(A) and 2903.31(A), a misdemeanor of the fourth degree. On motion by the state, the case was transferred to municipal court on January 9, 1992. This case was then tried to the bench.

On April 28, 1992, the trial court found appellant guilty on both counts and sentenced her to one-hundred eighty days in jail on the assault charge, thirty days on the hazing charge, and imposed a fine of $250. On May 6, 1992, appellant's jail time was suspended in lieu of eighteen months of supervised probation with the conditions that she perform two hundred hours of community service, undergo a mental health evaluation and any required counseling stemming from the evaluation, and submit to home incarceration for sixty days. This sentence was suspended pending appeal.

Appellant raises the following assignments of error:

"1. The trial court erred in failing to require the State of Ohio to provide a bill of particulars.

"2. The trial court abused its discretion and to the prejudice of appellant in granting the state's motion to amend the indictment during trial.

"3. The indictment for hazing fails to state an offense and must be dismissed.

"4. The trial court erred and to the prejudice of appellant in overruling appellant's motion for judgment of acquittal at the close of the state's evidence.

"5. The trial court erred and to the prejudice of appellant in receiving evidence which exceeded its jurisdiction.

"6. The trial court erred and to the prejudice of appellant in finding appellant guilty because appellant's conviction is not supported by the evidence and is against the manifest weight of the evidence.

"7. The trial court erred and to the prejudice of appellant in admitting certain photographic evidence.

"8. The trial court erred and to the prejudice of appellant in refusing to admit the medical records of state witnesses.

"9. The trial court erred and to the prejudice of appellant in excluding relevant evidence describing the rituals and traditions of sorority pledge activities on other college campuses."

Appellant's first assignment of error states that by failing to produce a bill of particulars, the state was allowed to proceed without providing her with a statement of what specific acts gave rise to criminal conduct. Appellant moved for a bill of particulars on February 28, 1992, requesting a statement from the prosecution setting forth the dates and locations of the alleged criminal acts and, most important, the act or acts committed or participated in by appellant which gave rise to criminal conduct.

Crim.R. 7(E), enacted in 1973, provides that:

"When the defendant makes a written request within twenty-one days after arraignment but not later than seven days before trial, or upon court order, the prosecuting attorney *shall* furnish the defendant with a bill of particulars setting up specifically the nature of the offense charged and of the conduct of the defendant alleged to constitute the offense. * * * "[1] (Emphasis added.)

We must first address the state's argument that pursuant to *State v. Gutilla* (1950), 59 Ohio Law Abs. 289, 47 O.O. 251, 99 N.E.2d 506, at paragraph two of the syllabus, the foregoing rules do not apply in misdemeanor actions before a municipal court. We disagree with the state's contention. Most notably, *Gutilla* was decided prior to the enactment of the Ohio Rules of Criminal Procedure, and cannot be viewed as construing them. Several more recent cases, namely *State v. Neiheisel* (1986), 29 Ohio Misc.2d 1, 29 OBR 55, 502 N.E.2d 711, and *State v. Fowler* (1963), 174 Ohio St. 362, 22 O.O.2d 416, 189 N.E.2d 133, provide insight into the current treatment of this issue.

The Supreme Court held in *Fowler* that:

"The right of an accused to be informed of the exact nature of the offense with which he is charged * * * applies equally to cases where one is *charged with a misdemeanor or a felony;* the basic right is the same in either instance * * *." (Emphasis added.) *Id.* at 364, 22 O.O.2d at 417, 189 N.E.2d at 134.

The Hamilton County Municipal Court held in *Neiheisel* at the syllabus that:

"A defendant charged with a misdemeanor in municipal court has a right under Crim.R. 7(E) to a bill of particulars."

In so holding, the court relied on both *Fowler* and *Dayton v. Pate* (Mar. 22, 1984), Montgomery App. No. 8372, unreported, at 10, 1984 WL 4420. The *Pate* court stated that Crim.R. 7(E) applies to all courts, and that a criminal defendant is entitled to a bill of particulars in the following situation:

" * * * when the charge contained in the complaint, indictment or information is indefinite or vague and does not fully inform him of the offense with which he is charged * * *." *Pate* at 10.

---

1. R.C. 2941.07, bill of particulars, enacted January 1, 1974, contains substantively the same language as Crim.R. 7(E), but differs slightly as to the procedural requirements. It provides that the defendant must make a written request "not later than five days prior to the date for trial." However, according to *Rockey v. 84 Lumber Co.* (1993), 66 Ohio St.3d 221, 611 N.E.2d 789, rules governing practice and procedure promulgated by the Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution control over subsequently enacted inconsistent statutes governing procedure. Accordingly, R.C. 2941.07 is of no force and effect. See *id.* at 225, 611 N.E.2d at 792.

Taking the foregoing excerpts into consideration, we agree with appellant that Crim.R. 7(E) applies to a misdemeanor case in municipal court. However, as for appellant's argument that she actually deserved a bill of particulars, we disagree.

■ First, our review of the indictment discloses that it contains two specific counts, is not indefinite or vague, and fully informs appellant of the exact offenses with which she is charged. The indictment clearly names the particular statutory sections which define the crimes charged, the exact time frame during which the crimes occurred, and the county where the crimes took place. Thus, appellant was properly advised as to the time, place, nature, and substance of the harm allegedly inflicted upon the claimed victims.

■ Appellee argues that the "open door" discovery policy employed in the instant case negates any requirement of a bill of particulars because appellant had access to all the information possessed by the prosecution. In so arguing, appellee relies on *State v. Eskridge* (Aug. 27, 1980), Summit App. No. 9664, unreported, at 3, in which the Ninth District Court of Appeals stated that defense counsel did not receive a bill of particulars because the information sought from the state was both contained in the indictment and subject to full examination from the prosecution's file.

While the court's January 7, 1992 journal entry here specifies that the parties will adhere to an "open door" discovery policy, we do not agree that such policy would be sufficient to provide appellant with notice of the state's actual theory of the case. However, as stated in the foregoing analysis, appellant has not demonstrated that she was in any way prejudiced by this omission. Not only does the indictment itself give her adequate notice of the time, place, nature, and substance of the crime, but the record demonstrates that she was present for nearly all of the events from which the charges evolved. Thus, appellant was fully aware of when and where the conduct at issue took place.

■ Appellant also relies on the two-step analysis set forth in *State v. Mitchell* (1983), 6 Ohio St.3d 416, 418, 6 OBR 463, 464, 453 N.E.2d 593, 594, and avers that the offenses of assault and hazing are allied offenses of similar import pursuant to R.C. 2941.25(A). Accordingly, she argues that without a bill of particulars, she had no way of knowing which acts are alleged to be violations of which offense.

■ Appellant is mistaken in her interpretation of case law. In order to constitute allied offenses, the court must determine that (1) the prosecution has relied upon the same conduct to support both offenses; (2) the offenses and their elements correspond to such a degree that commission of one of the offenses will result in the commission of the other; and (3) the commission of both offenses was motivated by the same purpose or animus. *State v. Brown* (1982), 7 Ohio App.3d 113, 7 OBR 145, 454 N.E.2d 596.

■ In the case at bar, the commission of complicity to both hazing and assault could not have been motivated by the same animus. *"Hazing"* under R.C. 2903.31(A) is a strict liability crime which does not require proof of any intention or purpose. However, *"assault"* under R.C. 2903.13(A) requires one to "knowingly cause" or "attempt to cause" physical harm to another. Therefore, since "hazing" requires no express animus, there is no way that appellant could have possessed the same animus for both "hazing" and "assault."

■ Further, appellant failed to raise the issue of allied offenses in her motion for bill of particulars, which effectively forecloses our consideration of the issue on appeal absent plain error under Crim.R. 52(B). See *State v. Lockett* (1976), 49 Ohio St.2d 48, 3 O.O.3d 27, 358 N.E.2d 1062, at paragraph five of the syllabus. As stated, appellant has not been prejudiced by the court's denial of her motion. Accordingly, appellant's first assignment of error is completely without merit.

■ Appellant premises her second assignment of error on the assertion that the trial court abused its discretion when ruling on the state's motion to amend the indictment to include the phrase "required for the commission of the offense," so that the indictment now reads "while acting with the kind of culpability required for the commission of the offense did aid or abet another in committing the offense of Assault [Hazing]."

We note that appellant did not object to the form of the indictment at trial. Thus, again we will only consider the error on appeal if that error rises to the level of plain error.

Amendment of an indictment is controlled by Crim.R. 7(D), which provides, in pertinent part:

"The court may at any time before, during, or after a trial amend the * * * complaint * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. * * * "

■ Accordingly, an indictment which does not contain all the essential elements of an offense may be amended if the name or identity of the crime is not changed and the accused has not been prejudiced by the omission of the element. *State v. O'Brien* (1987), 30 Ohio St.3d 122, 30 OBR 436, 508 N.E.2d 144, at paragraph two of the syllabus.

The state sought to amend the indictment to accurately reflect the statutory language of R.C. 2923.03(A)(2), *complicity.* R.C. 2923.03(A)(2) states that:

"(A) No person, *acting with the kind of culpability required for the commission of an offense,* shall do any of the following:

" * * *

"(2) aid or abet another in committing the offense." (Emphasis added.)

The identities of the crimes have not been changed by adding this small portion of the relevant statutory language. Appellant was charged with complicity to both assault and hazing. After the amendment, she was still charged with the same offenses under the same statutory sections. Accordingly, "the amendment of the complaint by adding the language ['required for the commission of the offense'] did not change the crime[s] charged but corrected an omission of an element of the crime." *Niles v. Kostur* (Dec. 14, 1990), Trumbull App. No. 89–T–4318, unreported, at 4, 1990 WL 208838. Thus, absent evidence that appellant was misled, or that a substantial miscarriage of justice occurred, we conclude that the court did not err in permitting the state to amend the indictment. This assignment of error has no merit.

Appellant's third assignment alleges that the indictment for hazing does not state an offense. We have already conducted an analysis as to the sufficiency of the indictment with respect to the hazing charge in the first and second assignments of error. The rationale expressed previously is equally applicable here, and will not be repeated. Appellant's third assignment of error is not well taken.

Under her fourth assignment of error, appellant maintains that the trial court erred in failing to enter a judgment of acquittal in her favor pursuant to Crim.R. 29(A). Specifically, she alleges that the state failed to establish the elements of culpability and physical harm with respect to the assault charge. She also contends that there was substantial evidence presented to support her consent defense. She further argues that with respect to the hazing charge, the state failed to prove the elements of R.C. 2903.31(A): specifically, the presence of acts of initiation that cause or create "a substantial risk of causing mental or physical harm to any person."

Crim.R. 29(A) requires the court to enter a judgment of acquittal if the evidence is insufficient to sustain a conviction of the offenses alleged in the indictment. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394, 399–400, states that:

"Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

Additionally, *State v. Wolfe* (1988), 51 Ohio App.3d 215, 555 N.E.2d 689, at paragraph one of the syllabus, states that in reviewing a ruling on a Crim.R. 29(A) motion for judgment of acquittal, the reviewing court construes the evidence in a light most favorable to the state.

 Before reaching the merits of this assignment, we must address the state's argument that appellant waived this error by introducing evidence after the court overruled her Crim.R. 29(A) motion at the close of the state's evidence.

We note that pursuant to an old line of cases, a defendant, after moving for a directed verdict at the conclusion of the state's case, waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense. See *State v. Whitmeyer* (1984), 20 Ohio App.3d 279, 20 OBR 370, 485 N.E.2d 1055, at paragraph four of the syllabus; *State v. Durham* (1976), 49 Ohio App.2d 231, 3 O.O.3d 280, 360 N.E.2d 743; *State v. Collins* (1977), 60 Ohio App.2d 116, 14 O.O.3d 94, 396 N.E.2d 221.

However, recent pronouncements by the Ohio Supreme Court and a host of appellate courts have effectively overruled the holding in *Whitmeyer* in situations where the defendant renews his Crim.R. 29(A) motion at the close of his own case. See, *e.g.*, *State v. Thomas* (Apr. 17, 1990), Highland App. No. 719, unreported, at 5, 1990 WL 54913. In the case at bar, appellant renewed her Crim.R. 29(A) motion at the close of all the evidence.

In *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464, at paragraph one of the syllabus, the Ohio Supreme Court stated that when a motion for directed verdict is made at the conclusion of the plaintiff's case and is overruled, as long as a defendant renews his motion at the conclusion of all the evidence, he may rely on the denial of the earlier motion as error on appeal. Though *Helmick* was a civil case, we see no reason not to extend its logic to the criminal setting.

Accordingly, other state appellate courts have followed this ruling in the context of criminal cases. In *State v. Parks* (1990), 56 Ohio App.3d 8, 564 N.E.2d 747, at paragraph one of the syllabus, also a bench trial, the Second District Court of Appeals found no reason not to extend *Helmick* to all criminal cases. See, also, *Thomas,* Highland App. No. 719, at 5, 1990 WL 54913.

 As to the merits of appellant's assignment, our review of the record and testimony in the instant case supports the state's contention that the evidence was more than sufficient at the close of the state's case to sustain a conviction on both counts. Appellant raised as a defense the fact that certain pledges admitted to an awareness that the pledging process included the physical discipline, and, therefore, consented to participate. In support of her position, appellant argues that her "unlawful conduct" is not unlike that of the ordinary physical conduct incident to high contact sports, such as football, boxing, wrestling, etc., which is permitted because of consent of the players. However, there are three weaknesses in this analogy.

First, there is nothing in the record to indicate that these pledges consented to be "disciplined" to the *degree* indicated by the facts. Second, it is clear from the General Assembly's decision to enact a strict liability hazing statute that it has earmarked this type of activity as the kind it wishes to regulate and punish. If consent were a defense under the statute, its operation would be completely ineffective in the context of the "Greek" initiation process in which the pledges willingly participate in order to gain the prestige of membership. Last, the statutory scheme embodied in R.C. Title 29 suggests that it was not the intent of the General Assembly to make consent available as a general defense to criminal conduct. *State v. Gerhardt* (Aug. 14, 1986), Clark App. No. 2177, unreported, at 3, 1986 WL 8917. Where consent is deemed an appropriate defense, the lack of consent is typically a specific element of the crime, which is clearly not the case here. *Id.*

Thus, there is nothing in the record before us to indicate that the court abused its discretion in overruling appellant's motion for acquittal. Therefore, appellant's fourth assignment is also without merit.

Appellant's fifth and seventh assignments of error contain similar issues. As such, they will be treated in a consolidated fashion.

In her fifth assignment, appellant argues that throughout the trial, the state persisted in introducing evidence of events which occurred in Cleveland, Ohio, outside the jurisdiction of the lower court, with respect to the hazing charge. Appellant refers specifically to the introduction of testimonial and photographic evidence concerning the paddlings of Darlene Jeter and Susan Lynn, the most severe of which took place in Cuyahoga County during the Goddess stage. Appellant argues that the court erred in admitting this evidence because the indictment restricted itself to activities taking place in Portage County.

Under her seventh assignment, appellant specifically contends that the photos of Jeter's and Lynn's buttocks (Exhibits A and B) were not relevant to any acts for which appellant was indicted, since, again, all the paddling occurred in Cuyahoga County, outside the jurisdiction of the lower court.

As to her contention in these assignments that the photographs and testimonial evidence regarding Lynn's and Jeter's paddlings in Cleveland should have been excluded, appellant relies on R.C. 1901.20(A), and *State v. Kushlan* (1984), 10 Ohio Misc.2d 13, 10 OBR 225, 461 N.E.2d 37. R.C. 1901.20(A) provides as follows:

"The municipal court has jurisdiction of the violation of any ordinance of any municipal corporation *within its territory* * * * and of the violation of any misdemeanor committed within the limits of its territory * * *." (Emphasis added.)

In *Kushlan,* the Willoughby Municipal Court held that:

"For the purposes of determining jurisdiction of criminal matters in municipal court, the court is limited to crimes *all or part of which occurred within the territorial or geographical limits of the court,* and the concept of a continuing course of conduct cannot extend those limits beyond established municipal corporation boundaries." (Emphasis added.) *Id.* at syllabus.

■ Appellant interprets these sections to mean that the Portage County Municipal Court has jurisdiction to consider conduct which occurred solely in Portage County, and that the state cannot rely on the "continuing course of conduct" theory to support its position. We disagree.

■ First, we note that as stated in *Kushlan* at 13, 10 OBR at 226, 461 N.E.2d at 37–38, a municipal court's jurisdiction in criminal matters is statutorily defined as "territorial," and R.C. Chapter 1901 does not attempt to distinguish between jurisdiction of the subject matter, jurisdiction of the person, and venue. Thus, once it can be determined that the court has venue, and is the appropriate place for a dispute, it is assumed that the court has subject matter, or territorial, jurisdiction. *Id.* at 14, 10 OBR at 226, 461 N.E. at 38.

The facts in *Kushlan* differ markedly from those in the instant case. In *Kushlan,* Eastlake police officers were in the process of serving the defendant with a felony arrest warrant for his escape from their city jail. The warrant was issued by the Willoughby Municipal Court. Several months later when an anonymous tip led them to the defendant at a Cuyahoga County bar, the officers attempted to serve the warrant and take the defendant into custody. When the officers attempted to serve the warrant, defendant assaulted and committed other companion crimes upon the officers, for which charges were brought.

The prosecution in *Kushlan* attempted to argue that the resisting arrest and assault charges which emanated from conduct taking place in the Cuyahoga County bar were part of a "continuing course of conduct" originating with defendant's escape several months earlier in Lake County. The *Kushlan* court rejected this argument.

The facts in *Kushlan* were such that the conduct giving rise to the assault and resisting arrest charges at the Cuyahoga County bar could not have been a continuation of the escape because there was no evidence that the defendant planned, organized, or contemplated at the time of the escape two months earlier that he would engage in the offending conduct at this particular bar in Cuyahoga County. In other words, this resisting arrest and assault conduct were not in the same chronological sequence of events with the escape, but were instead totally disconnected.

Contrary to the scenario in *Kushlan*, the instant case involves a situation where the initial series of activities giving rise to the charges took place within the territorial bounds of the Portage County Municipal Court. The trial court admitted the photos and testimony of Jeter and Lynn as pertains only to the complicity to *hazing* charge. Concordantly, the record demonstrates that although the actual paddling took place in Cleveland on the nights in question, the entire *hazing sequence* commenced in Kent, Ohio, each night. The members planned, prepared for, and understood the ramifications of these activities in Kent. They calculated, while still in Kent, how the pledges would be treated in Cleveland.

The record clearly shows that during the week in question, the members and pledges met in Kent each night for the initial organization of these hazing sessions, then proceeded to Cleveland for the remainder of the "discipline," which included the paddling and other acts of hazing.

Accordingly, since *part* of the complicity to hazing conduct took place in Kent, Ohio, together with interrelated pertinent sequential activities that occurred in Cleveland, venue as to all these events certainly reposed in Portage County, which is consistent with the "continuing course of conduct" concept permitted in *Kushlan*. Therefore, since the evidence was admitted only with respect to the hazing charge, the Portage County Municipal Court had jurisdiction to hear the case, and did not err in admitting the photos, as they pertain solely to the complicity to hazing charge. We are also mindful, however, that pursuant to our interpretation of R.C. Chapter 1901 in *Kushlan*, the "continuing course of conduct" theory would have also supported the selection of Cuyahoga County as a proper forum for this case. Appellant's fifth and seventh assignments are not well taken.

■ As to appellant's sixth assignment of error, she alleges that the state failed to meet its burden of proof. Although she styles her argument in terms of her conviction being against the manifest weight of the evidence, it is clear that appellant is also arguing that the state's evidence was insufficient to sustain a conviction.

■ With respect to the standard of review upon appeal, the following excerpt from *State v. Wardlow* (1985), 20 Ohio App.3d 1, 2–3, 20 OBR 1, 2–3, 484 N.E.2d 276, 278, is most pertinent:

"[Appellant's] assignments of error are without merit as a review of the record discloses that after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, the trier of fact could have found that all the essential elements of the offense had been proven

beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St.2d 169 [10 O.O.3d 340, 383 N.E.2d 132]." (*Footnote omitted.*)

The evidence in this case is not conflicting. Even if it were, the issues of credibility of witnesses and the weight to be accorded certain evidence, though there may be certain inconsistencies, are matters for the trier of fact to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. The record reflects that there is both ample and credible evidence to support the trial court's conclusions. Accordingly, this assignment is without merit.

 Under appellant's eighth assignment of error, she argues that the court erred when it denied admission into evidence of the medical records of Kendra Preer and Sherry Jackson. Preer testified to being treated for one week at the University Health Center for the emotional distress incurred during this pledging process. Jackson testified that while visiting the Health Center for treatment of a cough, the doctor noticed that she could not breathe without pain, and asked if she had been hit. Jackson testified that she declined to respond to the doctor's question.

Appellant contends that Preer's and Jackson's testimony was a "surprise" because appellant was not provided with their medical records prior to trial pursuant to her Civ.R. 16 request for reports of physical and/or mental exams. Appellant later subpoenaed these records from the KSU medical records supervisor, Bonnie Mendiola. However, when Mendiola was called to testify, the court denied appellant the opportunity to admit the full contents of the records for purposes of impeaching Preer's and Jackson's testimony. The court sustained the state's objection as to the physician-patient privilege with respect to the actual contents of the records.

In support of her assignment, appellant relies on R.C. 2317.02(B), which provides that if a patient voluntarily testifies, a physician may be compelled to testify on the same subject. Appellant claims that Preer and Jackson voluntarily provided testimony concerning matters in the medical reports, thus effecting a waiver of the privilege.

 The law is clear that the physician-patient privilege is not waived merely because the patient testifies. *Moore v. Grandview Hosp.* (1986), 25 Ohio St.3d 194, 25 OBR 259, 495 N.E.2d 934. Also, several jurisdictions in Ohio have recognized the rule that hospital records retain a privileged status and may not be released unless the person who is the subject of the records actually or implicitly waives the privilege. See *Kromenacker v. Blystone* (1987), 43 Ohio App.3d 126, 127–128, 539 N.E.2d 675, 676–678; *Pacheco v. Ortiz* (1983), 11 Ohio Misc.2d 1, 11 OBR 43, 463 N.E.2d 670, at paragraph two of the syllabus.

R.C. 2317.02(B)(2) provides for a waiver under the conditions in sections (B)(1)(a) through (c). Our review of the facts and evidence reveals that no waiver of the physician-patient privilege was effected pursuant to these sections of the statute. Further, we do not find that either Preer or Jackson testified to her actual treatment and/or diagnosis, to wit, the privileged communications with her health care provider regarding the condition requiring hospitalization and medical attention. Preer and Jackson merely testified that they were in fact admitted to the Health Center for a certain length of time.

 Similarly, Mendiola was permitted to look at the records and testify to the fact that Preer was hospitalized for seven days, which was the only information called into question by appellant. Thus, the court technically admitted the records into evidence, but only for the limited purpose of disclosing the number of days the witnesses were treated, and not for the actual contents of the communications between the witnesses and their physicians. Therefore, the information sought by appellant, namely the number of days that the witnesses spent at the center, was actually admitted into evidence by the court. Accordingly, appellant was in no way prejudiced by the court's restraint in not permitting the full contents of each record to be admitted. This assignment of error has no merit.

 Under appellant's ninth assignment of error, appellant argues that evidence concerning sorority initiation traditions on other college campuses was important to establish the background and history of initiation activities for AKA, and should have been admitted into evidence. Appellant contends that this evidence is relevant because it would support her contention that she did not "*knowingly* cause or attempt to cause physical harm to another" pursuant to R.C. 2903.13(A).

 Regarding relevancy of evidence, Evid.R. 402 states that "all relevant evidence is admissible." Also, a trial court is vested with broad discretion in the admission of evidence. *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130. First, evidence regarding initiation activities on another campus, during another year, has no bearing on the circumstances in the instant case. Second, R.C. 2901.22(B) gives the statutory definition of "knowingly" and reads as follows:

"A person acts knowingly, *regardless of his purpose*, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. * * *" (Emphasis added.)

It is very clear from appellant's testimony that she understood completely the danger associated with the acts she committed, and the likelihood that harm would result from them. Thus, "regardless of [her] purpose" in following suit with the longstanding traditions of AKA, she nevertheless acted with a "knowing"

state of mind, which is the required animus under R.C. 2903.13(A), *assault.* Accordingly, the evidence sought by appellant would not have been relevant in determining whether she acted knowingly. Therefore, the trial court did not abuse its discretion in refusing to admit it. This assignment is devoid of merit.

Based on the foregoing, we conclude that none of appellant's nine assignments of error has merit. Accordingly, we affirm the judgment of the lower court.

*Judgment affirmed.*

BROGAN and WOLFF, JJ., concur.

JAMES A. BROGAN and WILLIAM H. WOLFF, JR., JJ., of the Second Appellate District, sitting by assignment.