OPINION
Defendant-appellant, Cameron Russ, appeals his convictions in the Clermont County Court of Common Pleas for corruption of a minor and burglary. We affirm the decision of the trial court.
Appellant, age eighteen, had sexual intercourse with his thirteen-year-old neighbor, Christina, in the spring of 1998. In May, Christina's mother drove her to the emergency room when she complained of pain and began vomiting profusely. The doctors discovered that Christina was pregnant. After hearing the diagnosis, Christina cried and told her mother that appellant had raped her. Christina's mother reported the allegation to the police. Christina aborted the baby and subsequent DNA testing indicated that appellant was the child's father.
Appellant was indicted on one count of rape in violation of R.C. 2907.02(A)(2), one count of aggravated burglary in violation of R.C. 2911.11(A)(1), and one count of corruption of a minor in violation of R.C. 2907.04(A).
At trial, the witnesses described two very different accounts of the sexual activity between Christina and appellant.
Christina testified that she was in her room watching television after school one day in April when she heard her dog bark. She yelled, "Who's there?" But nobody answered. Appellant appeared in her doorway and Christina asked him what he wanted. Appellant told her to "shut up," closed her door and pushed her onto her bed. Despite Christina's protestations, appellant knelt on her thighs and removed her clothing. Then he raped her. Christina told no one about the rape until the day at the hospital when she discovered she was pregnant. Christina testified that she did not tell anyone what had happened because she feared no one would believe her since appellant was friends with her older brother.
Contrary to Christina's testimony, appellant testified that he and Christina had consensual sexual intercourse three times. In fact, appellant stated that their intimate relationship began in January. Appellant had just returned home from school and was standing in his driveway when Christina approached and began talking to him. Christina indicated that she was going up the street to see some friends and she took appellant's coat. Appellant went up the street to retrieve his coat from Christina. Christina returned the coat to appellant and then bluntly announced that she wanted to have sex with him. Appellant challenged her, stating, "No, you wouldn't." Christina replied, "Yes, I would" and kissed him.
In March, appellant walked down to Christina's house and knocked on the door. Christina opened the door and started kissing appellant. She invited appellant to come to her room. Christina again started to kiss appellant. While they were kissing, Christina undressed and appellant did the same. Christina engaged in fellatio with appellant and then they had sexual intercourse. Appellant testified that a similar sexual encounter occurred again later that month and again in early April.
Appellant testified that each of his visits to Christina's house was timed so that they could be alone. He was aware of when Christina's mother worked and the time at which her father would arrive home. On at least one occasion, appellant made sure that Christina's brother was playing basketball at his house with his brother.
Keith Porter, a mutual friend of Christina and appellant, testified that Christina told him at a church activity that she was sleeping with appellant. In addition, Porter stated that Christina talked to him over the telephone about her sexual relationship with appellant.
The trial court adjudicated appellant not guilty of rape, finding that the sexual encounters were consensual. The trial court found appellant guilty of one count of corruption of a minor. The trial court adjudicated appellant not guilty of aggravated burglary, but found him guilty of the lesser included offense of burglary. Appellant was sentenced to three years of imprisonment for burglary and one year for corruption of a minor, both sentences to be served concurrently. From the decision of the trial court, appellant appeals, raising three assignments of error. For purposes of clarity, we will address the assignments of error out of order.
In his first assignment of error, appellant argues that there was insufficient evidence to convict him of the charge of corruption of a minor. Specifically, appellant maintains that the state failed to produce any evidence that appellant knew Christina's age or was reckless in that regard.
The trial court convicted appellant of violating R.C.2907.04(A), which states:
 No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.
 A person acts recklessly with regard to circumstances when, "with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
In order to preserve the right to appeal the sufficiency of evidence supporting a conviction, a defendant must timely move the trial court for an acquittal pursuant to Crim.R. 29. State v. Roe
(1989), 41 Ohio St.3d 18, 25; State v. Cayson (May 14, 1998), Cuyahoga App. No. 72712, unreported; State v. Heestand (Apr. 27, 1998), Stark App. No. 1997 CA 00227, unreported. Crim.R. 29 states in relevant part:
 (A) Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
 A review of the record reveals that appellant never moved for an acquittal pursuant to Crim.R. 29. Therefore, appellant has waived his right to appeal any asserted evidentiary deficiencies. We note, however, even in the absence of waiver, that there exists sufficient evidence in the record for the trial court to have concluded beyond a reasonable doubt that appellant was reckless with regard to Christina's age at the time of the offense. The first assignment of error is overruled.
In his third assignment of error, appellant challenges his conviction for burglary. Appellant argued to the trial court that there was insufficient evidence to convict him of burglary because Christina consented to appellant's entry into the home and to sexual intercourse. Appellant challenges the trial court's decision to the contrary.
The trial court convicted appellant for burglary under R.C.2911.12(A)(1), which provides that:
 No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure * * * when another person other than an accomplice of the offender is present, with the purpose to commit in the structure * * * any criminal offense.
 Trespass is an essential element of burglary. State v. Steffen
(1987), 31 Ohio St.3d 111, 115; State v. Barksdale (1983), 2 Ohio St.3d 126, 127. R.C. 2911.21, which defines criminal trespass, states in relevant part:
 (A) No person, without privilege to do so, shall do any of the following:
 (1) Knowingly enter or remain on the land or premises of another;
 (2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows he is in violation of any such restriction or is reckless in that regard * * *.
 Privilege is the distinguishing characteristic between unlawful trespass and lawful presence on the land or premises of another. Privilege is "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.12(A)(12). "Where no privilege exists, entry constitutes trespass." State v. Lyons (1985), 18 Ohio St.3d 204, 206.
A party can forfeit privilege and become a trespasser by committing a felony while on another's premises. This principle is illustrated by comparison of State v. Barksdale (1983), 2 Ohio St.3d 126
and State v. Steffen (1987), 31 Ohio St.3d 111.
In Barksdale, the Ohio Supreme Court affirmed the reversal of a burglary conviction where the defendant entered a used car lot after hours and stole items from several of the cars displayed there. 2 Ohio St.3d at 130. The essential element of trespass was absent where the defendant was privileged to be on the premises because of the owner's tacit invitation to the public to visit the car lot and view the vehicles available for purchase.Id. at 128. The court concluded that a business invitee or licensee who commits a felony while present on another's land does not thereby become a trespasser. Id. at 128-129.
In Steffen, the court upheld an aggravated burglary conviction where the defendant assaulted, raped and killed a woman in her parents' home. 31 Ohio St.3d at 115. The defendant was selling a cleaning product door-to-door when the victim permitted him entry into her parents' house to demonstrate the product. Id. at 112. The court held that the defendant's privilege to remain in the home as an invitee terminated the moment he commenced his assault upon the victim. Id. at 115. In reaching its conclusion, the court stressed the importance of the inviolability of private homes and distinguished between felonies committed against property and persons. Id; see, also, State v. Lilly (1999),87 Ohio St.3d 97, 102 (noting that the primary purpose of punishing burglary is to protect the occupants of dwellings).
Thus, every offense committed upon the property of another is not a burglary. Where the defendant is privileged to be on the property or premises of another, there is no burglary. But where the defendant commits an offense against a person in the person's private dwelling, the defendant forfeits privilege, becomes a trespasser and can be culpable for burglary.
In this case, the trial court found appellant entered Christina's home to have sexual intercourse with her at least twice. Although Christina "consented" in fact to the sex, at the age of thirteen she cannot legally consent to sex with an eighteen-year-old man. The General Assembly, in accordance with generally accepted societal norms, has determined that sexual conduct by a person eighteen years of age with an adolescent thirteen years of age is a crime without regard to the adolescent's consent. See R.C. 2907.04; see, also, State v. Ohler
(Feb. 14, 2000), Stark App. No. 1999CA00073, unreported (noting that consent is not a defense to corruption of a minor). Thus, appellant relinquished any privilege he may have had by virtue of Christina's permission to enter the house when he engaged in sexual intercourse with her. As the trial court aptly noted, Christina's consent only changes the underlying criminal act: appellant was convicted of corruption of a minor rather than rape. Christina's consent does not change the underlying burglary.
Accordingly, we conclude that there exists sufficient evidence for the trial court to find appellant guilty of burglary beyond a reasonable doubt. The third assignment of error is overruled.
In his second assignment of error, appellant argues that the trial court erred by quashing the subpoena that he served upon Bethesda North Hospital requesting Cristina's medical records. Appellant's subpoena duces tecum ordered the "caretaker of records" of Bethesda North Hospital to bring to court all documents and notes relating to Christina's visits to the hospital. Appellant asserts that the subpoena would have produced medical records at trial "which would have shown that no rape occurred and the suspicious manner in which [Christina] alleged that she was raped." Appellant complains that the trial court's decision to quash the subpoena forced him to take the stand in his own defense.
Under Crim.R. 17(C), a subpoena may be used to command a person to produce in court books, papers, documents and other objects. However, the court upon motion of a party may quash or modify the subpoena if compliance would be unreasonable or oppressive. Crim.R. 17(C). Generally, an appellate court applies an abuse of discretion standard when reviewing a trial court's decision to quash a subpoena. See, e.g., State v. Wasmus (Apr. 27, 1995), Franklin App. Nos. 94APA07-1013, 94APA07-1014, unreported. The word "may" in Crim.R. 17 is permissive, implying that the trial court may exercise its discretion and quash or modify a subpoena. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
The trial court quashed appellant's subpoena because it concluded that Christina's hospital records were inadmissible privileged communications protected under R.C. 2317.02. R.C.2317.02(B)(1) provides that a physician may not testify concerning a communication made to him by his patient in that relation, unless the patient waives the testimonial privilege.
R.C. 2317.02(B)(4)(a) broadly defines "communication" to include
 acquiring, recording, or transmitting any information, in any manner, concerning any facts, opinions, or statements necessary to enable a physician * * * to diagnose, treat, prescribe, or act for a patient. A `communication' may include, but is not limited to, any medical or dental, office, or hospital communication such as a record, chart, letter, memorandum, laboratory test and results, x-ray, photograph, financial statement, diagnosis or prognosis.
 Information placed in hospital records by a physician is privileged. Weis v. Weis (1947), 147 Ohio St. 416, paragraph five of the syllabus; Humphry v. Riverside Methodist Hosp.
(1986), 22 Ohio St.3d 94, 96, overruled on other grounds by State ex rel. Steckman v. Jackson (1994), 70 Ohio St.3d 420, 438; Johnston v. Miami Valley Hosp. (1989), 61 Ohio App.3d 81, 84. Notations made by nurses in the "nurses' notes" portions of a hospital record are also privileged because they are necessary to enable a physician to diagnose, treat or prescribe for a patient. Johnston, 61 Ohio App.3d at 84. Thus, the term "communication" as defined by R.C. 2317.02(B)(4)(a) specifically includes hospital records and is sufficiently broad to cover any confidential information gathered or recorded within them during the treatment of a patient at the hospital. See Dellenbach v. Robinson (1993), 95 Ohio App.3d 358, 370; State v. Brown (1993), 90 Ohio App.3d 674, 689; State v. Bourdess (Oct. 7, 1999), Franklin App. No. 74842, unreported.
Since hospital records are privileged, they may not be released unless the person who is the subject of the records actually or implicitly waives the privilege. Id. R.C. 2317.02(B)(1) states that a patient waives his testimonial privilege when he gives express consent, files a medical claim under R.C. Chapter 4123, or is deceased. In addition, the physician-patient privilege does not extend to tests performed to determine the concentration of alcohol or drugs of abuse in a person's blood, breath or urine. R.C. 2317.02(B)(2); Johnston, 61 Ohio App.3d at 85. A person does not waive his physician-patient privilege merely by testifying.Brown, 90 Ohio App.3d at 689.
We conclude that the trial court did not abuse its discretion by quashing appellant's subpoena because Christina's hospital records were privileged. There is nothing in the record demonstrating that Christina waived the privilege. Although appellant specifically sought the medical records to prove that the sexual encounter with Christina was consensual, the trial court ultimately found that that the sexual intercourse was consensual and acquitted appellant of the rape charge. Appellant's second assignment of error is overruled.
 _______________ POWELL, P.J.
YOUNG and VALEN, JJ., concur.