The STATE of Ohio, Appellee,

v.

WHITEAKER, Appellant.

[Cite as *State v. Whiteaker*, 188 Ohio App.3d 489, 2010-Ohio-3502.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 93304.

Decided July 29, 2010.

Ronald A. Skingle, for appellant.

William D. Mason, Cuyahoga County Prosecuting Attorney, and R. Paul Racette, Assistant Prosecuting Attorney, for appellee.

---

KENNETH A. ROCCO, Presiding Judge.

{¶ 1} Defendant-appellant, Corrine Whiteaker, appeals from her conviction for theft following a bench trial. She argues that the evidence was insufficient and that her conviction contravened the manifest weight of the evidence. We find that the evidence presented by the state was insufficient to support appellant's conviction. Accordingly, we reverse.

{¶ 2} Appellant and her husband, Roland Whiteaker, were both charged with one count of theft with an elderly specification in an indictment filed October 29, 2008. Both defendants waived a jury, and the case proceeded to trial before the court. At the conclusion of the trial, the court found appellant guilty of theft. The court sentenced her to five years of community control and ordered her to

pay restitution of $3,779 to the victim, jointly and severally with her husband. The court further ordered that community-control sanctions could end when all restitution had been paid.

{¶ 3} At trial, the parties stipulated that the Whiteakers had deposited coins in appellant's bank account on ten occasions between July 1 and August 29, 2008. They also stipulated that the victim, appellant's mother-in-law, was elderly.

{¶ 4} The state presented the testimony of the victim, Adelle Whiteaker; First Merit Bank investigator Kirk Saxon; Strongsville Patrolman Derek Apo; and Strongsville Detective Steven Dzurisin. The victim testified that she and her husband collected coins from the washers and dryers on rental properties they owned. Eventually, they filled two milk cans and a cream can with coins; they also had a separate canvas bag containing collectible coins. Neither she nor her husband counted how many coins there were. She had placed a piece of plywood on top of the cans and covered it with an Indian blanket. In March or April 2008, the victim and her son (appellant's husband) moved the cans so that her son could paint the room.

{¶ 5} The victim's husband suffered from dementia and could not be left unsupervised. In June 2008, the victim asked her son to take care of his father while she took a trip to South Dakota. When she returned, she noticed ripples in the blanket that covered the cans filled with coins; knickknacks on top of the blanket had been removed. Six or eight weeks after that, she tried to move the cans and discovered that they were far lighter than they had been. She also discovered that the canvas bag was missing. She then called the police.

{¶ 6} Kirk Saxon, a financial-crimes investigator for First Merit Bank, testified that the Strongsville Police Department contacted him for video surveillance tapes of deposits being made to appellant's bank account. He identified photographs of appellant and/or her husband depositing coins at the bank at times that corresponded to deposits recorded to appellant's account. Specifically, a deposit of $1,880 was made on July 1, 2008, at 12:54 p.m.; a deposit of $1,080 was made on July 8, 2008, at 1:52 p.m.; a deposit of $552 was made on July 11, 2008; a deposit of $200 was made on July 15, 2008; a deposit of $1,160 was made on July 31 at 9:13 a.m.; a deposit of $420 was made on August 4, 2008, at 12:16 p.m.; a deposit of $185 was made on August 11, 2008, at 3:31 p.m.; a deposit of $40 was made on August 18, 2008, at 11:02 a.m.; a deposit of $200 was made on August 19, 2008, at 12:00 p.m.; and deposits of $249 and $150 were made on August 29, 2008, at 4:22 p.m. While coins were included in each deposit, Saxon could not say what portion of each deposit consisted of coins.

{¶ 7} Patrolman Derek Apo and Detective Steven Dzurisin of the Strongsville Police Department both testified about their investigation of the theft. Their

testimony concluded the state's case. Both defendants then moved the court for acquittal. The court denied their motion.

{¶ 8} Appellant's husband testified on his own behalf and also presented the testimony of Sharon Schuster, his niece (the victim's granddaughter), and Carmen Schoch, his sister (the victim's daughter). Appellant's husband testified that the victim had given him permission to take the coins if "something happened to either one of my parents."

{¶ 9} Appellant's husband said that his parents had a violent fight, after which his mother left and went to South Dakota. While she was gone, he was "forced" to take care of his father (the victim's husband) because he needed supervision. One day, he found coins on the floor at his father's house. He instructed his father to pick them up. His father did so. He later discovered that his father had put the coins in plastic bags in the garage. He told his father to move the bags, and his father did.

{¶ 10} Appellant's husband kept a car in his parents' garage while the victim was away. When he took the car back to his home, he discovered that the plastic bags of coins were inside. He estimated that there were "a few hundred dollars" in the bags. He took the coins home and combined them with coins he had collected himself, "because of what my mother done costed me work, my wife and myself had to even use up our coins in order to live because she costed me work." He testified that his mother gave him money, which he spent taking care of his father. He returned what was left of that money after she came back.

{¶ 11} Appellant's husband testified that he did not know how much of the bank deposits that he and appellant made in July and August 2008 were in coins, but most of the deposits were from work he and appellant did.

{¶ 12} Appellant also testified. She said that she had been present while her husband painted at the victim's home and heard the victim give him permission to take the coins. She and her husband took the coins from his car and put them in their apartment. Later, they took the coins to the bank and deposited them along with their own payroll checks.

{¶ 13} The defendants renewed their motions for acquittal at the conclusion of all the evidence. The court denied the motions. The court found that the state had proved the defendants guilty beyond a reasonable doubt and found that the value of the stolen property was more than $500. At sentencing, the court heard further testimony from First Merit Bank's assistant branch manager, who supplied copies of bank records of the deposits. These records showed that some $3,800 in coins had been deposited in the defendants' account.

{¶ 14} Appellant first challenges the sufficiency of the evidence. In essence, sufficiency is a test of adequacy. "An appellate court's function when

reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 15} Appellant questions the adequacy of the state's case before any evidence was presented by the defense. She preserved any error in the court's denial of her Crim.R. 29 motion at the close of the state's case by renewing her motion for acquittal at the close of all the evidence. See, e.g., *State v. Brown* (1993), 90 Ohio App.3d 674, 630 N.E.2d 397. Therefore, we do not consider her own inculpatory testimony that she deposited the victim's coins into her bank account.

{¶ 16} The state presented evidence that appellant deposited coins into her bank account. The victim's testimony provided some circumstantial evidence that appellant's husband had taken coins from the victim's home, but there is no evidence that appellant knew the coins came from the victim's home or that her husband had taken them without the victim's permission. We find insufficient evidence in the record to support the conclusion that appellant knowingly exerted control over the victim's coins without the victim's consent. Accordingly, we reverse.

*Judgment reversed.*

STEWART and CELEBREZZE, JJ., concur.