OPINION *Page 2 
{¶ 1} Defendant-Appellant Joshua D. Vires ("Vires") appeals from the April 10, 2007 Journal Entry on Sentence of the Court of Common Pleas, Auglaize County, Ohio, sentencing him to four years in prison for his conviction of Failure to Comply with Order or Signal of Police Officer, a felony of the third degree in violation of Ohio Revised Code2921.331(B)(C)(5)(a)(ii).
 {¶ 2} This matter stems from events occurring on October 18, 2006. On this date Trooper Gibson, a plainclothes investigator with the Ohio State Highway Patrol, received information from an employee of BG Recycling Center ("BG") in Cridersville, Ohio that an individual was attempting to scrap material that appeared to match the description of missing property belonging to contractors working at the Allen Correctional Institution. In response to this information, Sergeant Darren Johnson ("Johnson") and Trooper William Bowers ("Bowers") of the Ohio State Highway Patrol proceeded to BG to detain the suspect.
 {¶ 3} Upon arriving at BG, the officers noticed a red Pontiac Grand Am in the parking lot with a person, subsequently identified as Vires, in the driver's seat of the vehicle. Johnson and Bowers exited their patrol car and Bowers remained outside, keeping watch on the Grand Am while Johnson went into the *Page 3 
buildings on the premises in an attempt to locate the owner or an employee. After Johnson was unable to locate an employee, he returned to the area where Bowers was positioned, still observing the Grand Am. At this point, Bowers indicated to Johnson that the vehicle was moving and Johnson directed Bowers to stop the vehicle. Bowers ordered Vires to stop with several loud repetitive commands, but Vires did not respond and proceeded to leave the premises, heading westbound on National Road. Officers Bowers and Johnson returned to their patrol car and proceeded to follow Vires out of the BG lot, onto National Road. Although the officers lost sight of the Grand Am, they observed muddy tire tracks on National Road, leading into DB Salvage Yard ("DB").
 {¶ 4} After entering DB, the officers located the Grand Am parked amongst junk vehicles in the lot, and approached the vehicle on foot. However, as they were approaching the vehicle, Vires backed up, causing the officers to move out of the way to avoid being hit. Vires proceeded to drive around the parking lot, while Bowers, still on foot, ordered Vires to stop the vehicle. Vires did not comply with Bowers' orders to stop, continued driving around the parking lot, and on more than one occasion, came within feet of striking Bowers. As the officers had blocked the entrance/exit gate of DB, Vires tried to leave by driving through the metal fence surrounding the property. After getting stuck in the fence, Vires *Page 4 
exited the vehicle and attempted to flee on foot. Vires was subsequently apprehended while still within the premises of DB.
 {¶ 5} On November 15, 2006 an Auglaize County Grand Jury indicted Vires on one count of Receiving Stolen Property, a felony of the fifth degree in violation of R.C. 2913.51(A), one count of Failure to Comply with Order or Signal of Police Officer, a felony of the third degree in violation of R.C. 2921.331(B)(C)(5)(a)(ii), and one count of Aggravated Menacing, a misdemeanor of the first degree in violation of R.C.2903.21(A).
 {¶ 6} At his arraignment on November 29, 2006 Vires entered a plea of not guilty to each charge as contained in the indictment. On January 8, 2007 Vires appeared for a jury trial. However, prior to the commencement of trial, Vires moved the court to continue his trial date, waived his right to a speedy trial, and informed the court of his intention to retain new counsel. The trial court granted Vires' request for a continuance and rescheduled the jury trial.
 {¶ 7} This matter proceeded to a jury trial commencing February 12, 2007. At the end of the State's case, Vires moved for a Criminal Rule 29 Motion for Acquittal on all counts as charged in the indictment. The court overruled Vires's motion and the matter proceeded to Vires's case-in-chief.
 {¶ 8} At the close of all the evidence, the jury found Vires guilty of Count II, Failure to Comply with Order or Signal of Police Officer in violation of R.C. *Page 5 2921.331(B)(C)(5)(a)(ii), a felony of the third degree. The jury found Vires not guilty of Count I, Receiving Stolen Property and Count III, Aggravated Menacing. On February 20, 2007 the trial court entered its Orders on Jury Trial wherein the court ordered that the Adult Parole Authority conduct a pre-sentence investigation prior to sentencing.
 {¶ 9} On April 9, 2007 the trial court conducted Vires's sentencing hearing whereupon the court sentenced Vires to four years in prison for his conviction of Failure to Comply with Order or Signal of Police Officer. (See April 10, 2007 Journal Entry — Orders on Sentence).[1]
Vires was granted credit for 174 days served.
 {¶ 10} Vires now appeals, asserting two assignments of error.
 ASSIGNMENT OF ERROR NO. 1 THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT'S MOTION FOR ACQUITTAL, PURSUANT TO CRIMINAL RULE 29, IN THAT THE EVIDENCE OF THE STATE OF OHIO WAS INSUFFICIENT FOR THE MATTER TO HAVE BEEN SUBMITTED TO THE JURY.
 {¶ 11} In his first assignment of error, Vires contends that the trial court improperly overruled his Criminal Rule 29 motion for acquittal and submits that the evidence presented by the State was insufficient to sustain a conviction on the charge of Failure to Comply with Order or Signal of Police Officer. *Page 6 
 {¶ 12} Crim.R. 29(A) provides that a court must order the entry of a judgment of acquittal of a charged offense "if the evidence is insufficient to sustain a conviction of such offense[.]" However, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, syllabus. The Bridgeman standard must be viewed in light of the sufficiency of evidence test set forth in State v. Jenks (1991),61 Ohio St.2d 259, 574 N.E.2d 492 at paragraph two of the syllabus.State v. Edwards 3rd Dist. No. 9-03-63, 2004-Ohio-4015. In Jenks, the Ohio Supreme Court held that "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks,supra.
 {¶ 13} The defendant may move the court for acquittal "after the evidence on either side is closed." Crim.R. 29(A). When a defendant moves for acquittal at the close of the state's evidence and that motion is denied, the defendant "waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense." State v. Edwards, supra citing State v. Brown (1993),90 Ohio App.3d 674, 685, 630 N.E.2d 397. In order to preserve a *Page 7 
sufficiency of the evidence challenge on appeal once a defendant elects to present evidence on his behalf, the defendant must renew his Crim.R. 29 motion at the close of all the evidence. Id. See also Helmick v.Republic-Franklin Ins. Co. (1998), 39 Ohio St.3d 71, 529 N.E.2d 464, paragraph one of the syllabus; State v. McElroy 3rd Dist. No. 2-2000-29, 2001-Ohio-2113.
 {¶ 14} Our review of the record reveals that Vires made his Crim.R. 29 motion at the close of the State's case-in-chief. The trial court denied Vires's motion and Vires proceeded to present evidence in his defense. Vires subsequently renewed his Crim.R. 29 motion for acquittal at the close of his casein-chief, which the trial court again denied.
 {¶ 15} Count II of the indictment herein charged Vires with one count of Failure to Comply with Order or Signal of Police Officer in violation of R.C. 2921.331(B)(C)(5)(a)(ii) which provides as follows:
 (B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.
 (C)(1) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer.
 * * *
 (5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:
 * * *
 (ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property. *Page 8 
 {¶ 16} In support of his first assignment of error, Vires argues that the evidence presented by the State failed to prove that there was a substantial risk of serious physical harm to any person or property so as to satisfy the necessary elements of R.C. 2921.331(B)(C)(5)(a)(ii).
 {¶ 17} Pursuant to R.C. 2901.01(A)(8), "substantial risk" is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."
 {¶ 18} Pursuant to R.C. 2901.01(A)(5), "serious physical harm to persons" means any of the following:
 (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
 {¶ 19} Finally, R.C. 2901.01(A)(6) defines "serious physical harm to property as any physical harm to property that does either of the following:
 (a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace; *Page 9 
 (b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time.
 {¶ 20} In the present case, the State presented the testimony of Sergeant Johnson who testified that upon seeing Vires's vehicle moving (while at BG), he directed Trooper Bowers to stop the car. Johnson testified that he heard Bowers give "loud verbal repetitive commands for the vehicle to stop, for the driver to stop that vehicle" and that Bowers yelled "stop" several times to the driver of the car, who Johnson identified in court as Vires. However, Johnson testified that Vires did not stop the vehicle after being ordered to do so and instead, "exited the parking lot at a rapid pace . . . in a hurry."
 {¶ 21} Johnson testified that he and Bowers proceeded to follow Vires out of BG and located Vires's vehicle at DB Salvage Yard. Johnson testified that after entering DB, they observed Vires's vehicle parked amongst the junk vehicles and approached the vehicle on foot. However, Johnson testified that as they were approaching the vehicle, the car "started up and backed towards us, at which point Trooper Bowers moved out of the way and I immediately retreated to my patrol car." Johnson testified that this made him feel "very tense, very scared situation."
 {¶ 22} Johnson also testified that he observed Vires circling the parking lot several times while Bowers, on foot, gave Vires several verbal commands to "stop *Page 10 
the vehicle, stop the vehicle" but that Vires "just kept driving . . . through the parking lot." Johnson testified that he observed Bowers "waving his hands, yelling, screaming, doing all that he could do to get the vehicle stopped." Johnson also testified that he observed Bowers standing in the middle of an aisle trying to get Vires to stop, but that Vires didn't stop and Bowers was forced to jump out of the way and take cover in a pile of damaged cars as Vires drove toward Bowers' position at a high rate of speed.
 {¶ 23} The State also presented the testimony of Trooper Bowers whose testimony was substantially similar to the testimony offered by Johnson concerning the events that occurred at BG. Bowers specifically testified that when Johnson initially ordered him to stop Vires's car, Bowers "pointed at him [Vires] to stop, come here" and testified further as follows:
 I yelled at him. I yelled at him after he didn't respond to my commands a half a dozen times at least. I pointed at him — clearly pointed at him and told him to come here and come back, come here. He stared at me all the way out of the drive and looked back at me as he's exiting and he sped out of the drive. * * * He just accelerated and basically sped out.
 {¶ 24} Bowers also testified that while at DB, Vires "raced around the junkyard" and "came up by me several different times." Bowers testified that he had his gun drawn and ordered Vires to stop on several different occasions but that Vires "never stopped, never complied with any commands at all." Bowers testified that at one point, Vires was coming at him — ducked down in the driver's *Page 11 
seat, but with the accelerator on and that "at the last minute he kinda swerved around and I jumped back between the cars." Bowers testified that Vires's actions made him feel "like he was going to try to run me over" and that he was scared.
 {¶ 25} Upon review of the record, we find that the State presented sufficient evidence to support a finding of each of the elements of Failure to Comply with Order or Signal of Police Officer in the present case. Therefore, we cannot find that the trial court erred in denying Vires's Crim.R. 29 motion for acquittal. Accordingly, Vires's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 2 THE DEFENDANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 26} In his second assignment of error, Vires claims that the jury's verdict was against the weight of the evidence and should be reversed.
 {¶ 27} Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. In reviewing whether the trial court judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. Id. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly *Page 12 
lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Andrews 3rd Dist. No. 1-05-70, 2006-Ohio-3764, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717;Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d 541.
 {¶ 28} In making this determination, the Ohio Supreme Court has outlined eight factors for consideration, which include "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness' testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary."State v. Apanovitch (1987), 33 Ohio St.3d 19, 23-24, 514 N.E.2d 394, citing State v. Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926, syllabus. Ultimately, however, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin,20 Ohio App.3d at 175, 485 N.E.2d 717.
 {¶ 29} In order to convict Vires of Failure to Comply with Order or Signal of a Police Officer in the present case, the State was required to show, beyond a reasonable doubt that Vires operated a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop, and that the operation of the motor *Page 13 
vehicle by the offender caused a substantial risk of serious physical harm to persons or property. See R.C. 2921.331(B)(C)(5)(a)(ii).
 {¶ 30} In support of his second assignment of error, Vires argues that the jury's verdict of not guilty as to the charge of Aggravated Menacing is inconsistent with the verdict of guilty as to the charge of Failure to Comply with Order or Signal of Police Officer.
 {¶ 31} In addition to the substantial testimony presented by Officers Johnson and Bowers, the State also presented the testimony of Sergeant Gene Jarvi ("Jarvi") of the Ohio State Highway Patrol. Jarvi testified that he spoke with Vires in the emergency room subsequent to his arrest. Jarvi testified that after he advised Vires of his constitutional rights, Vires indicated that he fled from the officers because he was scared because he did not have a driver's license. Jarvi also testified that Vires admitted that "the cop told me to stop and I was just pulling out, I got scared and panicked."
 {¶ 32} The credibility of witnesses is for the jury to decide.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Credibility is always an issue, whether impeached or not, and it is for the fact finder to impartially determine if a witness is credible and the amount of weight to be afforded to that particular witness's testimony. State v. Bayer (1995), *Page 14 102 Ohio App.3d 172, 182, 656 N.E.2d 1314. The jury may believe or disbelieve any witness. State v. Viola (1947), 51 Ohio Law Abs. 577, 82 N.E.2d 306.
 {¶ 33} We find that the substantial evidence presented during trial, coupled with the fact that the jury did not convict Vires on the charges of Receiving Stolen Property and Aggravated Menacing make it highly probable that the jury carefully assessed the credibility of each witness and properly weighed and considered all of the testimony and evidence presented before rendering their verdict. Therefore, we cannot find that the jury's verdict was against the manifest weight of the evidence. Accordingly, Vires's second assignment of error is overruled.
 {¶ 34} Based on the foregoing, the April 10, 2007 Journal Entry on Sentence of the Auglaize County Court of Common Pleas sentencing Vires to four years in prison for his conviction of Failure to Comply with Order or Signal of Police Officer is affirmed.
Judgment affirmed.
 ROGERS, P.J., and PRESTON, J., concur.
[1] We note that although the trial court's Journal Entry finds that Vires was convicted of "Fleeing Eluding an Officer, a violation of Ohio Revised Code § 2921.331(B)(C)(5)(a)(ii)" the proper title of this section of the Revised Code is in fact "Failure to Comply with Order or Signal of Police Officer." Therefore, we shall refer to that section by its correct title. *Page 1