{¶ 51} I concur with the majority's analysis and conclusions with respect to assignments of error one, three, and four but respectfully dissent as to assignment of error two. Following its analysis of assignment of error two, the majority decided that "reasonable minds could not conclude that `force or a threat of force' has been proved beyond a reasonable doubt"; and therefore, the trial court erred in overruling Euton's Crim.R. 29(A) motion. I respectfully disagree.
 {¶ 52} The evidence in this case is, for the most part, undisputed. The victim, J.D., testified: that he had only met Euton two days prior to the incident and his father had just met Euton on the day of the incident (May 30-31, 2006 T. at 138-39); that Euton was the only adult present in the home during the incident; and that Euton stumbled into the home highly intoxicated and fell on the floor. (Id. at 132, 140-41). Once Euton returned to the home alone and highly intoxicated, J.D. and his brother immediately left the living room where they were playing video games, entered a bedroom, and closed the door behind them. (Id. at 132). The two brothers then went to bed side by side on a twin-size mattress on the bedroom floor. (Id. at 149-50).
 {¶ 53} J.D. testified that a few minutes later, Euton, an intoxicated stranger, entered the dark room, crouched next to the mattress, fell over, reached under the blanket, and fondled J.D.'s penis on top of his cotton jogging pants. (Id. at 132-33, 152, 154-55). J.D. froze for a few moments, then turned to his older brother and *Page 23 
said, "Kirk, he is touching me * * * what should I do?" (Id. at 133, 155, 158, 168). After a brief pause, Kirk replied, "just get up." (Id. at 158). Frightened and acting on his brother's advice, J.D. told Euton he needed to use the restroom, got up from the bed, and left the room. (Id. at 134, 157). Soon after, Michael, Annie's nephew, arrived at the house, and J.D. told him what happened. (Id. at 134-35).
 {¶ 54} The evidence submitted also indicated that J.D. was in fear before, during, and after the incident with Euton. First, the evidence supports an inference that J.D. was frightened by Euton when he stumbled back into the home intoxicated, was the only adult present, and practically a stranger. Immediately upon Euton's arrival, both J.D. and his older brother left the room, entered a separate bedroom, and closed the door shut behind them. (Id. at 123). Furthermore, the evidence presented was that the two brothers, ages 16 and 14, slept together on a twin-size mattress. (Id. at 149-50). Michael, who shared the bedroom with the boys, testified: "[u]sually, one of them sleeps on the couch or on the floor." (Id. at 231). On cross examination, Michael was insistent that he never saw the boys sharing a bed together before the incident. (Id. at 235). This night, however, J.D. a fourteen-year old boy slept with his sixteen-year old brother. This fact coupled with the fact that the boys immediately left the room where Euton stumbled and fell over drunk, certainly entitles the jury to infer that J.D. was frightened when Euton returned to the home. *Page 24 
 {¶ 55} Second, J.D. testified that he was scared that Euton was going to follow him out of the bedroom and continue touching him. (Id. at 134). Third, everyone who observed J.D. shortly after the incident testified that he was frightened. Kirk, J.D.'s older brother who was in the bedroom during the incident, testified that J.D. ran to Erin's room where he would feel safe. (Id. at 180). Kala, J.D.'s sister, testified that J.D. was "fine, but he was scared." (Id. at 186). Erin, into whose room J.D. ran fleeing from Euton, testified that J.D. was scared, embarrassed, and upset. (Id. at 189, 191). James, J.D.'s father, testified that when he came home he found J.D. "bawlin," shaking, upset, and nervous. (Id. at 205-06). Annie testified that J.D. was shaken and upset. (Id. at 219). Michael testified that when he came home, J.D. asked to talk to him alone and that he tried to calm J.D. down. (Id. at 233). Andrew Liming, an officer with the St. Mary's police department, testified that when he arrived at the scene everyone was upset. (Id. at 252).
 {¶ 56} As this Court and the Ohio Supreme Court has stated before, when deciding if the trial court properly ruled on a Crim.R.29(A) motion, the relevant inquiry "is whether, after viewing the evidencein a light most favorable to the prosecution, any rational trier offact could have found the essential elements of the crime proven beyond a reasonable doubt." (Emphasis added). State v. Vires, 3d Dist. No. 2-07-16, 2007-Ohio-6015, ¶ 12; State v. Jenks (1991), 61 Ohio St.2d 259,574 N.E.2d 492, paragraph two of the syllabus. Furthermore, the Ohio Supreme *Page 25 
Court has stated, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reachdifferent conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." (Emphasis added). State v.Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
 {¶ 57} R.C. 2907.05(A)(1) provides, in pertinent part: "No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies * * * [t]he offender purposefully compels the other person * * * to submit by force or threat of force." "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C.2901.01(A)(1) (emphasis added).
 {¶ 58} Interpreting Ohio's rape statute, R.C. 2907.02, the Ohio Supreme Court has held that "[f]orce need not be overt and physically brutal, but can be subtle and psychological." State v. Eskridge (1998),38 Ohio St.3d 56, 58-59, 526 N.E.2d 304. So long as the victim's will was overcome by fear or duress, force can be established. Id. The amount of force depends upon the parties' age, size, strength, and relation to each other. Id., paragraph one of the syllabus. Moreover, a threat of force can be inferred from the circumstances surrounding the sexual conduct, and, like the rape statute, the gross-sexual imposition statute provides "a victim need not prove physical resistance to the offender." R.C. 2907.05(C). *Page 26 
 {¶ 59} The proper inquiry in this case is not whether we, members of the Court, would have found the element of "force" proven beyond a reasonable doubt; but rather, "whether, after viewing the evidencein a light most favorable to the prosecution, any rational trier offact could have" concluded that "force" was present. (Emphasis added).Vires, 2007-Ohio-6015 at ¶ 12, citing Jenks, 61 Ohio St.2d at paragraph two of the syllabus. Reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could conclude that force was proven in this case, as the twelve-member jury in this case found.
 {¶ 60} First, "force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1) (emphasis added). By its plain language, the definition provides "any" violence, compulsion, or constraint by "any means." Id. Simply put, "any" means "any." As used in R.C. 2901.01(A)(1) "any" is an adjective. As an adjective, "any" is defined as: "[o]ne or some, regardless of kind, quantity, or number; an indeterminate number or amount." The American Heritage Dictionary (2nd College Ed. 1985) 117. Accordingly, the fact that J.D. was frightened and froze up for a few moments before leaving the room was enough for a reasonable tier of fact to find that "any" compulsion was exerted. Furthermore, reasonable minds can differ on whether J.D.'s fear is "any" compulsion under R.C. 2901.01(A)(1); and therefore, the trial court was correct to deny Euton's Crim.R. 29(A) motion. Bridgeman, 55 Ohio St.2d at syllabus. *Page 27 
 {¶ 61} Second, the Ohio Supreme Court has held that "force" can be subtle and psychological. Eskridge, 38 Ohio St.3d at 58-59. "Force" can also depend upon the parties' age, size, strength, and relation to each other. Id., paragraph one of the syllabus. The majority explains thatEskridge's lesser showing of force only applies to parent-child relationships or relationships where the adult stands in a like-position of authority, citing State v. Schaim (1992), 65 Ohio St.3d 51, 54-55,600 N.E.2d 661 and State v. Dye (1998), 82 Ohio St.3d 323,695 N.E.2d 763.
 {¶ 62} Although the majority is correct that "subtle" and "psychological" force is generally applicable in parent-child or like cases, the Court in Eskridge went on to state: "[a]s long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." 38 Ohio St.3d at 58-59, citing State v. Martin (1946), 77 Ohio App. 553, 68 N.E.2d 807;State v. Wolfenberger (1958), 106 Ohio App. 322, 154 N.E.2d 774. Likewise, when the Ohio Supreme Court interpreted Eskridge, it concluded that:
 A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit. A threat of force can be inferred from the circumstances surrounding sexual conduct * * *
Schaim, 65 Ohio St.3d at 55. Consequently, the jury could still conclude that "force" was proven if it found either: (1) J.D.'s will was overcome by fear or *Page 28 
duress; or (2) Euton created the belief that physical force would be used if J.D. did not submit.
 {¶ 63} The jury had the following facts to reach either of these two findings: (1) Euton was an adult stranger; (2) Euton was intoxicated; (3) the boys immediately left the living room when Euton arrived; (4) the boys entered a separate bedroom and closed the door; (5) the boys, ages 16 and 14, slept on the same twin-size mattress, which they had never done previously; (6) J.D. froze-up when he was touched; (7) J.D. turned to his brother confused and scared stating, "He's touching me * * * What should I do?"; and (8) J.D. was scared before, during, and after the incident with Euton. Based on all of this evidence, a reasonable trier of fact could conclude either that J.D.'s will was overcome by fear or duress, or that Euton created a belief that physical force would be used if J.D. did not submit. Therefore, the trial court did not err in denying Euton's Crim.R. 29(A) motion.
 {¶ 64} Furthermore, the Court's rationale in Eskridge that whether the defendant compelled the victim to submit by an implicit threat of "force" depends upon the totality of the circumstances, including the age, size, and strength of the parties was not affected by its opinion in Schaim. Dye, 82 Ohio Std.3d at 330, Ohio St.3d at 330 (Cook, J., concurring) (Douglas, J., concurring). Although the size and strength of the parties in this case was not admitted into evidence, the jury was present in the courtroom and could make these observations. Euton was a *Page 29 
forty-year (40) old man. In contrast, J.D. was a fourteen-year (14) old boy. A reasonable fact-finder certainly could observe the parties at trial and weigh their observations of age, size, and strength in favor of finding force.
 {¶ 65} A trial court shall not grant a Crim.R. 29(A) motion when"reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt."Bridgeman, 55 Ohio St.2d at syllabus (emphasis added). Unlike this Court, each member of the jury had an opportunity to view the witnesses first-hand, evaluate their credibility, and weigh the evidence accordingly. Credibility determinations and weighing of evidence are within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 231, 227 N.E.2d 212. After hearing all the evidence and being instructed on the lesser included offense of sexual imposition that does not require force, the jury herein concluded that the element of force was proven. Based on the evidence, this determination was reasonable. Since reasonable minds can disagree as to whether the element of force was proven, the trial court did not err in denying Euton's Crim.R. 29(A) motion.
 {¶ 66} In conclusion, after reviewing the totality of the evidence in a light most favorable to the prosecution as required by the applicable legal standard, a reasonable fact-finder could find force present in this case. Therefore, I respectfully dissent. *Page 1