OPINION *Page 2 
{¶ 1} Defendant-appellant Kevin E. Langston appeals his conviction and sentence in the Guernsey County Court of Common Pleas on one count of possession of cocaine, a felony of the second degree, in violation of R.C. 2925.11(C)(4)(e). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On December 8, 2005, appellant was the operator of a motor vehicle traveling east on Interstate 70 in Muskingum and Guernsey County, Ohio. Steven Rogers, a trooper with the Zanesville Post of the Ohio State Highway Patrol was conducting a check of the rest area on Interstate 70. (T. at 8). While at said location, Trooper Rogers received a CB contact from a truck driver. (Id. 8-9). The driver advised Trooper Rogers that he (the truck driver) was eastbound on Interstate 70 and he had observed a vehicle swerving and driving recklessly. (T. at 9). In addition, the truck driver reported that the driver of this vehicle appeared to be drinking from a beer bottle. (Id.) The truck driver provided a description of the make, model, color and license number of the vehicle.
 {¶ 3} As a result of this call, the Trooper left the rest area, radioed his dispatch, provided dispatch with the information received from the truck driver, and turned around in order to pursue the vehicle in the eastbound lane. (Id.)
 {¶ 4} Trooper Rogers continued in contact with the truck driver until the time he initiated the traffic stop of appellant's vehicle. (T. at 10). Trooper Rogers observed the vehicle as he approached, observed the vehicle as he waited for other traffic to clear in *Page 3 
order to get behind the target vehicle, then observed the vehicle from directly behind it for roughly one-half mile before initiating the stop.
 {¶ 5} During this observation period the Trooper did not observe a beer bottle nor did he observe the appellant drinking from anything. Furthermore, during this period of observation, the Trooper did not observe the appellant's vehicle weaving, speeding, swerving within it's lane, improperly crossing any line, driving recklessly, having a loud muffler or loud sound, or any other possible criminal traffic offense prior to pulling the vehicle over. Trooper Rogers confirmed by pacing that the vehicle was traveling under the speed limit at roughly 59 miles per hour. The Trooper radioed the license plate information to dispatch which informed the Trooper that the car was properly licensed and registered to a Columbus car rental company. The Trooper did not testify that the car had been reported stolen or any other problems. In spite of the fact that the Trooper failed to observe any moving violations on the part of the appellant, and in spite of the fact that the registration came back valid, the Trooper initiated a traffic stop of the appellant.
 {¶ 6} Trooper Rogers approached Appellant's vehicle on the passenger's side due to heavy traffic. (T. at 12). Upon the trooper's approach to the vehicle, appellant rolled down the passenger's side window. As soon as appellant rolled down his window, Trooper Rogers immediately smelled a strong odor of marijuana coming from the vehicle. (T. at 13) Based upon this smell, Trooper Rogers determined a probable cause search of the vehicle was necessary and appropriate. He placed appellant in the back seat of his cruiser and waited for an additional trooper to arrive at the scene to assist. (T. at 15). *Page 4 
 {¶ 7} Trooper Kevin Kelly arrived at the scene a short time later. Upon Trooper Kelly's arrival, Trooper Rogers began a search of appellant's vehicle. During said search, Trooper Rogers discovered two hard chunks of a white powdery substance. (T. at 16). Unsure of what they were, Trooper Rogers asked Trooper Kelly if he could identify the substance. Trooper Kelly could not identify the substance and testified that, at first, he thought it might be soap. (T. at 47).
 {¶ 8} Trooper Kelly approached appellant and asked him if he knew what the substance was. Appellant said something to the effect of "I don't know, it's not mine." (T at 45). From this answer, specifically, appellant's unwillingness to accept ownership, Trooper Kelly opined, "it's crack." (Id.). When Trooper Kelly said this, he then heard appellant shout something from the back of Trooper Rogers' cruiser. Trooper Kelly opened the door of the cruiser and asked appellant, "what?" Appellant then stated that the substance was cocaine, not crack. (T. at 46).
 {¶ 9} Appellant was arrested and charged with Possession of Cocaine, a felony of the first degree pursuant to Ohio Revised Code Section2925.11(C)(4)(e). A suppression hearing was held in the Guernsey County Common Pleas Court on April 6, 2006. Appellant sought suppression of all evidence obtained from the traffic stop of December 6, 2005 as well as his statement made to troopers. Following presentation of testimony and evidence, said motion was denied. Appellant thereafter entered a plea of no contest to an amended indictment, which amended the crime to a felony of the second degree. Appellant was found guilty of said crime and sentenced to six years in prison. That sentence was modified to four years following further hearing held on December 18, 2006. *Page 5 
 {¶ 10} It is from this conviction and sentence that Appellant has appealed, raising the following six assignments of error:
 {¶ 11} "I. THE TRIAL COURT ERRED WHEN IT FOUND THAT THERE WERE REASONABLE ARTICULABLE FACTS FOR THE STATE HIGHWAY PATROL TROOPER TO INITIATE A STOP OF THE DEFENDANT'S VEHICLE.
 {¶ 12} "II. THE TRIAL COURT ERRED WHEN IT FOUND THAT THE ANONYMOUS TIP WAS OF SUFFICIENT RELIABILITY AS TO NOT REQUIRE INDEPENDENT POLICE CORROBORATION.
 {¶ 13} "III. THE TRIAL COURT ERRED IN DETERMINING THAT THE STATE DEMONSTRATED AT THE SUPPRESSION HEARING THAT THE FACTS JUSTIFIED A REASONABLE SUSPICION OF CRIMINAL ACTIVITY AND THAT THE QUALIFICATIONS OF THE TROOPER WERE SUFFICIENT TO ESTABLISH PROBABLE CAUSE TO SEARCH THE VEHICLE.
 {¶ 14} "IV. THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS THE EVIDENCE GATHERED AS A RESULT OF THE IMPROPER TRAFFIC STOP OF THE DEFENDANT'S VEHICLE.
 {¶ 15} "V. THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS THE DEFENDANT'S STATEMENTS TO THE STATE HIGHWAY PATROL.
 {¶ 16} "VI. THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS UNDER THE OHIO AND FEDERAL CONSTITUTIONS WHEN IT SENTENCED HIM BASED UPON POST-CONVICTION FACT-FINDINGS MADE BY THE COURT." *Page 6 
 I. II. {¶ 17} In his first and second assignments of error, appellant argues that the trial court erred when it denied his motion to suppress. Specifically, appellant argues that the Trooper lacked a reasonable articulable suspicion to initiate a traffic stop of appellant's vehicle. We agree.
 {¶ 18} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v.Klein (1991), 73 Ohio App.3d 486, State v. Guysinger (1993),86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See: State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law, an appellant may argue the trial court has incorrectly applied the law in deciding the ultimate or final issue raised in the motion to suppress. In reviewing this type of claim, an appellate court must give deference to the trial court and is governed by an abuse of discretion standard; i.e., it must determine whether the trial court's subjective determination of the ultimate issue in the case was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. It is with this framework in mind that we address the appellant's first and second assignments of error. *Page 7 
 {¶ 19} An investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that "the person stopped is, or is about to be, engaged in criminal activity." United States v. Cortez (1981), 449 U.S. 411, 417,101 S.Ct. 690, 66 L.Ed.2d 621. Reasonable suspicion can arise from information that is less reliable than that required to show probable cause.Alabama v. White (1990), 496 U.S. 325, 330, 110 S.Ct. 2412,110 L.Ed.2d 301. But it requires something more than an "inchoate and unparticularized suspicion or `hunch.' "Terry v. Ohio (1968),392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889. "[T]he Fourth Amendment requires at least a minimal level of objective justification for making the stop." Illinois v. Wardlow (2000), 528 U.S. 119, 123, 120 S.Ct. 673,145 L.Ed.2d 570.
 {¶ 20} Where the information possessed by the police before the stop was solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight to be given the tip and the reliability of the tip. Id. at 299, 720 N.E.2d 507. Courts have generally identified three classes of informants: the anonymous informant, the known informant from the criminal world who has provided previous reliable tips, and the identified citizen informant. Id. at 300, 720 N.E.2d 507. An identified citizen informant may be highly reliable, and therefore a strong showing as to other indicia of reliability may be unnecessary. Id. Thus, courts have routinely credited the identified citizen informant with greater reliability. Id.
 {¶ 21} Appellant argues that the police had insufficient reasonable suspicion or probable cause to support their initial stop of his vehicle. We agree.
 {¶ 22} In Florida v. J.L. (2000), 529 U.S. 266, 120 S.Ct. 1375,146 L.Ed.2d 254, an anonymous caller reported to the Miami-Dade police that a young black man *Page 8 
standing at a particular bus stop and wearing a plaid shirt was carrying a gun. Police responded to the tip and saw three black men hanging around the bus stop, one of whom, J.L., was wearing a plaid shirt. Apart from the telephonic tip, the officers had no reason to suspect any illegal conduct. The officers did not see a firearm and J.L. made no threatening or otherwise unusual movements. One of the officers approached J.L., told him to assume the position, frisked him, and seized a gun from his pocket. 120 S.Ct. at 1377.
 {¶ 23} The Supreme Court affirmed the Florida Supreme Court's decision to suppress the gun seized during the frisk. The Court noted that unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if his allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity. Id. at 1378. Although the Court acknowledged that it previously had upheld a search based on an anonymous tip that accurately predicted the suspect's future movements, see Alabama v.White, 496 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1990), the Court noted that it had deemed the facts in White "borderline." Id. at 1378-79. In most cases, knowledge about a person's future movements indicates some familiarity with that person's affairs, but having such knowledge does not necessarily imply that the informant knows, in particular, whether that person is carrying hidden contraband. Id. The Court found the tip in J.L. insufficient because it contained no predictive information and therefore left the police without means to test the informant's knowledge or credibility: "All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither *Page 9 
explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." Id. at 1379.
 {¶ 24} In response to the government's claim that everything the tipster said turned out to be true, the Court stated that an accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: it will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person. Id. Finally, the court noted that the mere fact that a tip, if true, would describe illegal activity does not mean that the police may make a Terry stop without meetingTerry's reliability requirement. Id. at 1380. Accordingly, the information known to the police at the time they frisked J.L. was not enough to make the search reasonable.
 {¶ 25} A tip which standing alone would lack sufficient indicia of reliability may establish reasonable suspicion to make an investigatory stop if it is sufficiently corroborated through independent police work.Alabama v. White (1990), 496 U.S. 325.
 {¶ 26} The fact that the informant provided the dispatching officer with a description of the vehicle and its location does not, in and of itself, make him a reliable source of information. See State v.Ramsey (Sept. 20, 1990), Franklin App. Nos. 89AP-1298 and 89AP-1299. In the present case, as in J.L, the anonymous tip failed to show that the informant had "knowledge of concealed criminal activity" and was thus reliable in its assertion of illegality. At most, the tip helped the officers identify a "determinate person." Here, the Trooper was able to corroborate information related by *Page 10 
the tipster in that he located a blue vehicle matching the description and license plate number provided. None of these facts, however, are indicative of any illegal activity. The tip provided no basis upon which to test its assertion of illegal conduct and the Trooper did not personally observe appellant engage in criminal activity. Accordingly, the Trooper's partial corroboration of the informant's tipalone did not give him a reasonable suspicion of criminal activity sufficient to justify the stop. State v. Jordan, 104 Ohio St.3d 21, 31,2004-Ohio-6085 at ¶ 42, 817 N.E.2d 864, 874-875.
 {¶ 27} Had the veracity and reliability of the informant's tip been corroborated, or had the officer followed appellee for a longer time and himself witnessed erratic driving, then there would indeed have been sufficient indicia of reliability to make the stop. However, that was not done. Instead, the Trooper who made the stop relied solely on the tipsters report and then followed appellant's car for approximately one-half mile. In that short time, the Trooper admits, he did not observe any weaving or any other erratic driving to lead him to believe that appellant was committing a crime. Nor did he observe appellant drink from any type of container. Nevertheless, he stopped appellee's vehicle. Maumee v. Weisner, 87 Ohio St.3d 295, 304-305, 1999-Ohio-68,720 N.E.2d 507, 516. (Sweeney, J., Dissenting). As such, the only reliable facts the Trooper had were neutral facts, insufficient to give rise to reasonable, articulable suspicion. State v. McCormick (Aug. 27, 1999), 5th Dist. No. 99-CA-5.
 {¶ 28} The appellant's first and second assignments of error are sustained.
 {¶ 29} In light of our disposition of appellant's first and second assignments of error we find appellant's remaining assignments of error are moot. *Page 11 
 {¶ 30} For the foregoing reasons, the judgment of the Guernsey County Court of Common Pleas is reversed, and the cause is remanded to that court for further proceedings in accord with law and consistent with this opinion.
Gwin, P. J., Hoffman, J., and Wise, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Guernsey County Court of Common Pleas is reversed, and the cause is remanded to that court for further proceedings in accord with law and consistent with this opinion. Costs to appellee. *Page 1