OPINION
{¶ 1} Defendant-Appellant Clinton Dontez Faggs, III, appeals from his conviction of one count of carrying a concealed weapon, a felony of the fourth degree. The State of Ohio is Plaintiff-Appellee.
 {¶ 2} On April 15, 2007, at approximately 5:30 p.m., the Mansfield Police Department received a 911 call from a person who stated they were at 542 Woodland Avenue and that they had observed two men, one white and one black, in a black pickup truck, waving a gun around inside the truck.
 {¶ 3} Officer Ronald Barnes, of the Mansfield Park Police, was two blocks away from Woodland Avenue when he heard the dispatch. He responded to the area and pulled up in an alley that intersected with Woodland Avenue. He observed a truck matching the description given by the caller. The truck had two occupants in it, but Officer Barnes could not discern their race at the time he pulled up. He did not immediately approach the truck, as he was waiting for backup to arrive.
 {¶ 4} Officer Phil Messer, Jr., of the Mansfield Police Department, was responding to the call when Officer Barnes radioed that the vehicle was pulling away from the curb. Officer Barnes pulled out behind the truck and followed it. Officer Messer pulled in behind Officer Barnes and both cruisers activated their lights and sirens at the same time. They initiated a felony traffic stop, where they immediately drew their guns and ordered the occupants out of the vehicle. Officer Messer instructed both occupants to put their hands out the windows, which they did, and ordered the driver, who was a Caucasian man named Richard Rowe, out of the vehicle. *Page 3 
 {¶ 5} As Rowe was exiting the truck, Officer Terry Rogers arrived on the scene to provide additional backup assistance. Rowe was compliant as he exited the vehicle. Appellant, the African American passenger, however, began making furtive gestures and disobeyed officers' orders. While the officers were removing Rowe from the truck, Appellant pulled his left hand back inside the vehicle and began making furtive movements as if he was stuffing something in the area of the center console. Officer Rogers repeatedly ordered him to place both hands back outside the window before he complied.
 {¶ 6} After both occupants had been removed from the truck and secured in separate cruisers, officers went back to look inside the vehicle. In plain view, sticking out from underneath the center console, with the handle pointed towards the passenger's seat, was a Glock 17 nine millimeter handgun. On the driver's side floorboard, the officers also observed a small rock of what was later determined to be crack cocaine.
 {¶ 7} Richard Rowe agreed to speak with officers and admitted that he had been addicted to crack cocaine and that he had traveled from Marion, Ohio, to Mansfield with Appellant to obtain drugs. Rowe stated that he had bought drugs from Appellant in the past, but that when he approached Appellant on April 15, 2007, for drugs, Appellant advised him that he did not have any to sell. Appellant agreed to travel to Mansfield with Rowe to purchase some crack and they drove there in Rowe's black Ford F-150 truck, with Appellant traveling in the passenger seat and Rowe driving.
 {¶ 8} The two men arrived at 542 Woodland Avenue in Mansfield, where Rowe parked his truck on the street. They were sitting in the truck for approximately ten *Page 4 
minutes when Appellant pulled out a handgun and showed it to Rowe. Rowe testified that he did not like guns because he had seen the damage that they could do when he was in Vietnam and he told Appellant to put it away.
 {¶ 9} Rowe observed a police cruiser pull up to a stop sign on the street where they were parked. He became nervous, so he pulled away from the curb and decided to go somewhere else and call the dealer that he was meeting. The cruiser pulled out behind him and followed him. Rowe testified that as he turned the corner, several other police cruisers pulled up with their lights flashing and ordered him and Appellant out of the truck.
 {¶ 10} Rowe admitted that the crack cocaine found on the floor of the truck had to be his, but that he did not know it was there or he would have smoked it instead of driving to Mansfield to purchase more. He also stated that the weapon did not belong to him and that he does not own any weapons.
 {¶ 11} As a result of this stop, Appellant was indicted by the Richland County Grand Jury on one count of carrying a concealed weapon, in violation of R.C. 2923.12(A)(2). Rowe was indicted on one count of possession of crack cocaine in violation of R.C. 2925.11 and one count of improper handling of a firearm in a motor vehicle, in violation of R.C. 2923.16. Rowe pled guilty to the charge of possession of crack cocaine and the improper handling charge was dismissed. He was sentenced to community control with a possible prison term of nine months suspended barring any violations while he was on community control.
 {¶ 12} Appellant pled not guilty to the charge against him and his case was set for trial. Prior to trial, he filed a motion to suppress the gun which was discovered *Page 5 
during the stop, arguing that the anonymous tip did not provide reasonable suspicion for the stop. A hearing was held, where the state presented testimony from police dispatcher Amanda Smith, Officer Barnes, and Officer Rogers. The trial court overruled the motion to suppress, finding that the officers had reasonable suspicion to stop the vehicle after the details provided by the 911 caller were corroborated and that they were authorized to conduct a protective search of the vehicle after they observed Appellant make furtive movements during the stop.
 {¶ 13} Appellant proceeded to jury trial where he was found guilty as charged.
 {¶ 14} Appellant now raises three Assignments of Error:
 {¶ 15} "I. THE STATE FAILED TO PROVIDE SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION OF APPELLANT.
 {¶ 16} "II. THE CONVICTION OF APPELLANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 17} "III. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS."
 I II {¶ 18} In his first and second assignments of error, Appellant argues that there was insufficient evidence to support his conviction and that his conviction was against the manifest weight of the evidence.
 {¶ 19} When reviewing a claim of sufficiency of the evidence, an appellate court's role is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Contrary *Page 6 
to a manifest weight argument, a sufficiency analysis raises a question of law and does not allow the court to weigh the evidence. State v.Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
 {¶ 20} Conversely, when analyzing a manifest weight claim, this court sits as a "thirteenth juror" and in reviewing the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 548, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 21} Pursuant to Crim. R. 29(A), a defendant may make a motion for acquittal "after the evidence on either side is closed." When a defendant moves for acquittal at the close of the state's evidence and that motion is denied, the defendant "waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense." State v. Brown (1993), 90 Ohio App.3d 674, 685,630 N.E.2d 397. In order to preserve a sufficiency of the evidence challenge on appeal once a defendant elects to present evidence on his behalf, he must renew his Rule 29 motion at the close of all the evidence. Id., citing Helmick v. Republic-Franklin Ins. Co. (1988), 39 Ohio St.3d 71,529 N.E.2d 464, paragraph one of the syllabus; see, also, Dayton v. *Page 7 Rogers (1979), 60 Ohio St.2d 162, 163, 14 O.O.3d 403, 398 N.E.2d 781, overruled on other grounds, State v. Lazzaro (1996), 76 Ohio St.3d 261,667 N.E.2d 384, syllabus.
 {¶ 22} Upon reviewing the record, we find that Appellant did make a Crim. R. 29 motion at the close of the State's case. However, Appellant then presented evidence on his own behalf, and failed to renew his motion for acquittal at the close of his case. Therefore, Appellant has waived all but plain error regarding a sufficiency argument. In order to find plain error, Crim. R. 52(B) requires that there be a divergence from a legal rule, that the error be an "obvious" defect in the trial proceedings, and that the error affect a defendant's "substantial rights." State v. Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. Reversal on grounds of plain error is to be granted "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage" of justice. Id .
 {¶ 23} In order to convict Appellant of carrying a concealed weapon, the state needed to prove that Appellant knowingly carried or had, concealed on his person or ready at hand, a handgun other than a dangerous ordnance. R.C. 2923.12(A)(2).
 {¶ 24} The evidence presented is sufficient to support Appellant's conviction. A 911 call was made to the Mansfield Police Department from 452 Woodland Avenue where the caller observed one white male and one black male, sitting in a black pickup truck, waving a gun around. The dispatcher notified cruisers in the area to respond to the scene. Officer Barnes testified that he was two blocks from 452 Woodland Avenue when he heard the dispatch and promptly arrived at the scene, where he parked in an alley and observed the truck while he waited for backup to arrive. *Page 8 
 {¶ 25} When Officers Barnes and Messer initiated a felony traffic stop, they immediately ordered both men to stick their hands out of the windows of the car. The driver, Rowe, immediately complied. Appellant initially complied, and then began making furtive movements with his left hand down by his side. Officers repeatedly ordered him to place his hand back outside of the vehicle, which he finally did.
 {¶ 26} Once Appellant and Rowe were secured, the officers approached the vehicle and in plain view observed the handle of a handgun sticking out on the passenger side of the center console. The barrel was pointed towards the driver's seat.
 {¶ 27} Rowe immediately spoke to the officers, stating that he had driven with Appellant to Mansfield so that he could purchase crack cocaine because he was an addict. He stated that he had purchased crack from Appellant before, but that Appellant told him that he did not have any crack to sell him on that date.
 {¶ 28} While Rowe and Appellant were waiting in the truck for the dealer who Rowe was meeting, Appellant pulled a handgun out of his pants and began showing it to Rowe. Rowe asked him to put the gun away because he was not comfortable around guns. During this exchange, Rowe noticed that a police cruiser had pulled up at the curb and was watching them. He became nervous and drove away, and the police pulled them over moments later.
 {¶ 29} Viewing the evidence in a light most favorable to the prosecution, we believe this is more than sufficient to support Appellant's conviction.
 {¶ 30} In a manifest weight analysis, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact *Page 9 
clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Otten (1986), 33 Ohio App.3d 339, 340, 33 Ohio App.3d 339.
 {¶ 31} In addition to the evidence already discussed, Appellant took the stand in his own defense. His testimony was contradicted by every other witness who testified. Appellant stated that he did not know why Rowe was going to Mansfield and that Appellant just went with him as a friend. He also testified that the gun was not his, that he did not know there was a gun in the car, and that no one waved a gun around in the car at all, which contradicts not only Rowe's testimony, but also the independent 911 call to the police.
 {¶ 32} Appellant further contradicted himself by first stating that he was not a "regular" user of crack, and then several minutes later stating that he never used crack and did not sell it either.
 {¶ 33} Appellant also testified that Rowe left the vehicle and went into a house for seven to ten minutes and that when Appellant saw a police cruiser pull up in the alley, he called Rowe and told him that police were watching the car and to come back out. He stated that Rowe then returned to the car and they left the area. This completely contradicts the 911 call and Officer Barnes' testimony. The 911 caller stated that two men (one white and one black, per the description given by the 911 caller) were sitting in the truck waving a gun around. Officer Barnes, who was two blocks away from 542 Woodland Avenue, responded immediately upon hearing the dispatch. Upon arriving at the scene, Officer Barnes observed the two men in the vehicle for several minutes before they pulled away from the curb. No one came out of a house and got *Page 10 
into the truck. He immediately followed them and then he and Officer Messer initiated a felony traffic stop where Rowe was removed from the driver's seat and Appellant was removed from the passenger seat.
 {¶ 34} In weighing the evidence and in considering the credibility of the witnesses, we do not believe that the trier of fact lost its way and find no manifest miscarriage of justice in this verdict.
 {¶ 35} Appellant's first and second assignments of error are overruled.
 III {¶ 36} In his third assignment of error, Appellant argues that the trial court erred in denying his motion to suppress on the basis that the anonymous 911 tip was not independently verified by officers on the scene.
 {¶ 37} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 713 N.E.2d 1. During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. State v. Brooks, (1996), 75 Ohio St.3d 148,661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Metcalf (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard.State v. Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. *Page 11 
 {¶ 38} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982), 1 Ohio St.3d 19, 1 Ohio B. 57, 437 N.E.2d 583; andState v. Klein (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. SeeState v. Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v.Curry (1994), 95 Ohio App.3d 623, 620 N.E.2d 906.
 {¶ 39} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. Katz v. United States (1967),389 U.S. 347, 357, 88 S.Ct. 507. An investigative stop, orTerry stop, is a common exception to the Fourth Amendment warrant requirement. Terry v. Ohio (1968), 391 U.S. 1, 88 S.Ct. 1503. Because the "balance between the public interest and the individual's right to personal security," United States v. Brignoni-Ponce (1975),422 U.S. 873, 878, 95 S.Ct. 2574, tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that *Page 12 
criminal activity "may be afoot." United States v. Sokolow (1989),490 U.S. 1, 7, 109 S.Ct. 1581 (quoting Terry, supra, at 30). InTerry, the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. See, also, State v. Chatton (1984), 11 Ohio St.3d 59, 61,463 N.E.2d 1237.
 {¶ 40} The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews (1991),57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271; State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489. The Supreme Court of the United States recently re-emphasized the importance of reviewing the totality of the circumstances in making a reasonable suspicion determination:
 {¶ 41} "When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *Page 13 
 {¶ 42} "Our cases have recognized that the concept of reasonable suspicion is somewhat abstract. But we have deliberately avoided reducing it to `a neat set of legal rules.' In Sokolow, for example, we rejected a holding by the Court of Appeals that distinguished between evidence of ongoing criminal behavior and probabilistic evidence because it "create[d] unnecessary difficulty in dealing with one of the relatively simple concepts embodied in the Fourth Amendment."490 U.S., at 7-8, 109 S.Ct. 1581." United States v. Arvizu (2002), 534 U.S. 266,273, 122 S.Ct. 744 (internal citations and quotes omitted).
 {¶ 43} Although a reviewing court must look to the totality of circumstances as viewed by the detaining officer, the standard for reviewing the decision to effectuate a warrantless arrest is an objective one: "would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" State v. Williams (1990),51 Ohio St.3d 58, 60-61, 554 N.E.2d 108 (citations and internal quotations omitted).
 {¶ 44} In analyzing the reasonableness of a stop under Terry, it is important to remember that proof that a crime has occurred is not required. Terry demands only such facts as are necessary to support a reasonable suspicion that a crime may have occurred. Illinois v.Wardlow (2000), 528 U.S. 119, 123, 120 S.Ct. 673. "The purpose of aTerry stop is not to accuse, but to investigate. Even facts that might be given an innocent construction will support the decision to detain an individual momentarily for questioning, so long as one may rationally infer from the totality of the circumstances — the whole picture, . . . that the person may be involved in criminal activity." City of PepperPike v. Parker (2001), 145 Ohio App.3d 17, 20, 761 N.E.2d 1069, citingUnited States v. *Page 14 Cortez (1981), 449 U.S. 411, 417, 101 S.Ct. 690. "In allowing such detentions, Terry accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk in connection with more drastic police action; persons arrested and detained on probable cause to believe they have committed a crime may turn out to be innocent. The Terry stop is a far more minimal intrusion, simply allowing the officer to briefly investigate further." Illinois v.Wardlow (2000), 528 U.S. 119, 126, 120 S.Ct. 673.
 {¶ 45} In Florida v. J.L., the U.S. Supreme Court did hold that an anonymous tip, with nothing more, is insufficient to provide reasonable suspicion for a Terry stop. However, there is more to this case than what occurred in Florida v. J.L. (2000), 529 U.S. 266, 120 S.Ct. 1375. In Florida v. J.L., police received an anonymous tip that a young black male was standing at a particular bus stop, wearing a plaid shirt and carrying a gun. Apart from that tip, officers had no reason to believe that any illegal activity either had just occurred or was about to occur. The Court held that the anonymous tip alone lacked sufficient indicia of reliability and violated the defendant's Fourth Amendment rights. The court's reasoning for determining that the anonymous tip did not contain sufficient indicia of reliability were that the anonymous information neither (1) explained how the informant knew about the gun, nor, (2) supplied any basis for believing that the informant had inside information. Florida v. J.L. (2000), 529 U.S. at 271.
 {¶ 46} Conversely, in Alabama v. White, the Supreme Court determined that where an anonymous informant had inside knowledge about the suspect, there was moderate indicia of reliability that would support a stop. See Alabama v. White (1990), 496 U.S. 325, 110 S.Ct. 2412. *Page 15 
 {¶ 47} Appellant cites State v. Langston, 5th Dist. No. 2006-CA-24, 2007-Ohio-4383, which is inapposite to the present case. InLangston, the defendant was operating a motor vehicle traveling east on Interstate 70 in Muskingum and Guernsey Counties, Ohio. Steven Rogers, a trooper with the Zanesville Post of the Ohio State Highway Patrol was conducting a check of the rest area on Interstate 70 when he received a CB contact from a truck driver, who advised Trooper Rogers that he (the truck driver) was eastbound on Interstate 70 and he had observed a vehicle swerving and driving recklessly. Additionally, the truck driver reported that the driver of this vehicle appeared to be drinking from a beer bottle. The truck driver provided a description of the make, model, color and license number of the vehicle.
 {¶ 48} Trooper Rogers was able to catch up to the vehicle and observe it for approximately one-half mile before pulling it over. While observing the vehicle, the trooper did not observe any traffic violations and did not observe the defendant drinking from a beer bottle. Though Trooper Rogers observed no moving violations or other infractions, he still chose to pull the vehicle over. Upon the trooper's approach to the vehicle, the defendant rolled down the window. Trooper Rogers immediately smelled a strong odor of marijuana coming from the vehicle. Based upon this smell, Trooper Rogers determined a probable cause search of the vehicle was necessary and appropriate. This Court held that based on the anonymous tip alone, and in the absence of any moving violations or corroborating evidence, there was insufficient indicia of reliability to make the tip reliable.
 {¶ 49} A similar issue was raised in State v. Posey, 10th Dist. No 07AP-522, 2008-Ohio-3880. InPosey, an unidentified woman hiding in a closet of her residence *Page 16 
located at 739 Stambaugh Avenue in Columbus placed a 911 call requesting assistance: she informed the operator that an individual was in her home and forcing the others present inside her residence to strip off their clothes as part of a "robbery or a drug robbery of some kind." The woman identified the perpetrator by his street name, "Punter," whom she described as a black male, wearing a gray sweatshirt and white t-shirt.
 {¶ 50} Columbus Police were dispatched to the scene within five minutes. The officer observed an individual that matched the description given in the radio dispatch walk out of the yard. While walking away from the residence, the defendant looked over his shoulder, keeping his eye on the officer who had responded. The officer stopped the defendant at gunpoint, and ordered him to put his hands on his head. The officer then holstered his weapon and conducted a pat-down search of the defendant's person, which revealed a pistol in his front waistband. As a result of this discovery, the defendant was arrested for carrying a concealed weapon without a permit. Pursuant to a search incident to that arrest, the officer found a bag of crack cocaine in the defendant's pocket.
 {¶ 51} The defendant filed a motion to suppress, arguing that the search was not justified on the basis of an anonymous tip alone. The Tenth District, in rejecting the defendant's claim, stated, "A police officer need not always have personal knowledge of the specific facts justifying an investigative stop and may rely upon a police dispatch.U.S. v. Hensley (1985), 469 U.S. 221, 231, 105 S. Ct. 675,83 L.Ed. 2d 604. The constitutionality of an investigative stop based on a police dispatch does not depend upon whether law enforcement officers relying upon the dispatch were aware of the *Page 17 
specific facts that led to the dispatch. Id.; Maumee v. Weisner (1999),87 Ohio St.3d 295, 297, 1999-Ohio-68, 720 N.E.2d 507. Rather, we look to whether those who issued the dispatch possessed reasonable suspicion.Hensley, at 231; Weisner, at 297." Posey, supra, at ¶ 11.
 {¶ 52} "`A telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability.' Maumee, supra, at syllabus. Whether an anonymous tip can form the reasonable basis for an investigatory stop depends upon both the content of the information relayed to police and its degree of reliability. Alabama v. White (1990), 496 U.S. 325, 330, 110 S.Ct. 2412,110 L. Ed. 2d 301. `An anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity" to justify an investigative stop.' Id., at 329. (Citation omitted.) `This is not to say that an anonymous caller could never provide the reasonable suspicion necessary for [an investigative] stop.' Id. A stop is lawful if the facts relayed in the tip are `sufficiently corroborated to furnish reasonable suspicion that [the defendant] was engaged in criminal activity.' Id. at 331." Id., at ¶ 12.
 {¶ 53} Whether an informant is "anonymous" depends on whether the informant himself took steps to maintain his anonymity, not on whether the police had time to secure his name. State v. Jordan, 2nd Dist. No. 18600, 2001-Ohio-1630. In the present case, there is no evidence that the caller made any effort to keep his identity anonymous. See, also, Village of Waterville v. Reynolds (Jan. 23, 1998), 6th Dist. No. L-97-1056 (tip "not totally anonymous" when dispatcher was provided with the address of the person who called 911); see also State v. Posey, 10th Dist. No. 07AP-522. *Page 18 
 {¶ 54} This distinguishes truly "anonymous" tip calls from the present case. Here, the caller called from their address of 542 Woodland Avenue, and described a black truck with two occupants, a white male and a black male, sitting in the truck waving a gun around. Officer Ronald Barnes testified that he heard the dispatch and responded to the scene at 542 Woodland Avenue, where he observed a black truck with two occupants, a black male and a white male. As he waited for backup to arrive, the truck pulled away from the curb and began to leave the area. Officer Barnes followed the vehicle until backup, Officer Messer, arrived. At that point, the officers conducted a felony stop.
 {¶ 55} Once the vehicle was stopped, and the occupants were ordered out of the truck, Officer Barnes confirmed that the driver was white and the passenger, who was Appellant, was black.
 {¶ 56} Moreover, once officers stopped the vehicle, the occupants made further movements that justified an investigatory stop. Officer Barnes testified that while Officer Messer was ordering the driver to get out, Appellant put one of his hands back inside the truck. He ordered Appellant multiple times to place both hands out of the window of the vehicle where he could see them, but Appellant failed to comply.
 {¶ 57} Officer Barnes testified that the reason for having occupants show their hands during a traffic stop is for officer safety. Based on Appellant's furtive movements, the officers looked inside the vehicle after both occupants were detained. In plain view, Officer Barnes observed a handgun sticking out from underneath the center console of the vehicle with the handle pointing towards the passenger seat where Appellant was sitting. *Page 19 
 {¶ 58} We find the fact that Officer Barnes arrived on the scene shortly after, and in response to the emergency 911 call, to be of significance. When Officer Barnes arrived on the scene, he observed two individuals (Appellant and Rowe), who were in a truck matching the description given by the caller. When the occupants of the vehicle saw Officer Barnes, they left the scene and once they were stopped, Appellant made furtive movements, as if concealing something in the console of the truck. There were no other individuals matching said description in the vicinity, let alone, leaving the exact location provided by the caller. Also compelling is that Officer Barnes had considerable experience. At the time of the stop, he had been a member of the Mansfield Parks Police Department for two years and had been an Ashland Police Officer for seven years prior to that. His experience is a factor to be given due weight. State v. Taylor, 10th
Dist. No. 05AP-1016, 2006-Ohio-5866, at ¶ 13 (citations omitted).
 {¶ 59} Based upon an examination of the totality of the circumstances, we conclude that Officers Barnes and Messer had reasonable suspicion to believe that Appellant had been involved in criminal activity, and, as such, the stop of Appellant did not abridge the protections guaranteed by the Fourth Amendment. Given that the stop, then, was proper, the trial court committed no error in denying Appellant's motion to suppress.
 {¶ 60} Accordingly, Appellant's third assignment of error is overruled. *Page 20 
 {¶ 61} For the foregoing reasons, Appellant's assignments of error are overruled and the decision of the Richland County Court of Common Pleas is affirmed.
By: Delaney, J. Farmer, P.J. and Edwards, J. concur. *Page 21