[Cite as *State v. Pesano*, 2014-Ohio-5540.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2014CA00080 |
| | : | |
| MICHAEL J. PESANO | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Alliance Municipal
                              Court, Case No. 2014CRB00041


JUDGMENT:                     AFFIRMED


DATE OF JUDGMENT ENTRY:       December 15, 2014


APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

ALLIANCE PROSECUTOR'S OFFICE                STARK CO. PUBLIC DEFENDER
MICHAEL J. ROTH                            KIMBERLY STOUT
470 E. Market St.                          201 Cleveland Ave. SW, Ste. 104
Alliance, OH 44601                         Canton, OH 44702

*Delaney, J.*

{¶1}   Appellant Michael J. Pesano appeals from the May 29, 2014 Judgment Entry of the Alliance Municipal Court convicting and sentencing him upon one count of violating a protection order.  Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2}   At the time of these events, Jennifer Pesano was married to appellant's son; appellant is therefore her father-in-law.   Jennifer lived with appellant and her husband in a home in Struthers, Ohio, in Mahoning County.   On December 30, 2013, Jennifer obtained an ex parte "protection order"[1] from the Mahoning County Court of Common Pleas.

*Appellant Calls Jennifer Regarding Pets*

{¶3}   On Saturday, January 4, 2014, appellant went to the Mahoning County home with a police escort to obtain his belongings due to the existence of the protection order.  Remaining in the home were two lizards belonging to appellant.

{¶4}   That weekend, Jennifer moved to her mother's home in Alliance, Stark County, Ohio.

{¶5}   On Monday, January 6, 2014, appellant went to the Mahoning County residence to take care of the lizards and discovered the house was "freezing" because the furnace had been switched off.  Appellant was concerned because the lizards need to be kept warm and have a warming light for that purpose which is to only supplement

---

[1] The witnesses, parties, and trial court refer to the order in question as a "protection order," and sometimes an "ex parte order," without further specification.  This ambiguity in the record will be addressed infra.  The order itself is not in the record.

a sufficient temperature in the house. Appellant found the two lizards unresponsive although once the heat was turned back on they seemed to recover.

{¶6} In appellant's words, "At that point, I was pretty upset not knowing if Jennifer knew the heat was off or it was just an issue with the money [for utilities]. So I made the phone call. * * * *." Appellant acknowledged he was aware of the protection order but had only received two pages of it. He thought its purpose was to protect Jennifer from "violence" and he did not know he was not allowed to call her.

{¶7} Jennifer received appellant's voice mail message and he called her again an hour later, not leaving a message. Jennifer recognized appellant's phone number, which appeared on her phone, and his voice. She called her advocate who advised appellant was not to call her for any reason and told her to call the authorities. She called the Alliance Police Department and Officer Aaron Perkins responded.

{¶8} Perkins arrived at Jennifer's residence, listened to the message, recorded it, and took photos of the protection order. He testified the photos and recordings were placed on a "digital media tab." Perkins returned to the police department to prepare his report and Jennifer contacted him to say appellant called a second time. Perkins then called appellant directly and told him he was not to have any contact with Jennifer. Appellant told Perkins he was not aware he wasn't allowed to call and was trying to take care of animals left at the house. Appellant admitted to Perkins he was aware of the existence of a protection order and had been served with it. He knew he was not to have contact with Jennifer. Perkins discussed alternatives regarding the pets' care.

{¶9} Perkins reviewed the matter with the prosecutor and verified through the Mahoning County Clerk of Courts that appellant was served with the protection order.

*Criminal Charge: R.C. 2919.27(A)(2)*

{¶10} On January 8, 2014, appellant was charged by criminal complaint with one count of violation of a protection order pursuant to R.C. 2919.27(A)(2),[2] a misdemeanor of the first degree. The complaint states, "[Appellant] violated a protection order on 01-06-2014 by calling Jennifer Pesano and leaving a voice mail message."

{¶11} Appellant entered a plea of not guilty and the matter was set for jury trial.

{¶12} The protection order is not defined or described in the pretrial litigation in the record. In response to appellant's demand for a bill of particulars, appellee responded the overt acts alleged are "[Appellant] is alleged to have violated the protection order on 1/6/14 by calling the victim and leaving a voice mail message;" and the nature of the offense is "violating protection order."

{¶13} In response to appellant's demand for discovery, appellee responded with, e.g., a copy of the Alliance Police Department report which is contained in the record. Attached to the report are two photocopies: one from the Clerk of the Mahoning County Court of Common Pleas ordering the sheriff to make service of an "ex parte order" upon appellant; and the sheriff's return of service indicating appellant was served on December 31, 2013 with a certified copy of "protection order/vacate" (*sic*). A "Notice/Receipt Form for Civil Protection Order & Anti-Stalking Order" states appellant was served a protection order arising from case number 13 SHCP 808 DV in the

---

[2] R.C. 2919.27(A)(2) states: "No person shall recklessly violate the terms of * * *[a] protection order issued pursuant to section 2151.34, 2903.213, or 2903.214 of the Revised Code."

Mahoning County Domestic Relations Court on December 31, 2013 at 1439. Appellant's signature appears on the form acknowledging receipt.

{¶14} The narrative portion of Perkins' report states while at Jennifer's residence he photographed the protection order and recorded the voice mail message with his "POV camera," concluding, "The pictures and POV video are attached to the digital media tab on the report."

*Amendment of the Complaint:  R.C. 2919.27(A)(1)*

{¶15} The matter proceeded to jury trial on April 17, 2014.   Outside the presence of the jury, the trial court addressed two motions.

{¶16} First, appellee moved to amend the criminal complaint from a violation of R.C. 2919.27(A)(2) to a violation of R.C. 2919.27(A)(1).  The following discussion took place:

> [Prosecutor]:  * * * *.  The basis for [the motion to amend] was that the protection order was issued by the Mahoning County Domestic Relations Court, which is the authority for that.   The protection order was under 3113.31 of the [R]evised [C]ode, Your Honor.
>
> * * * *.
>
> [Defense counsel]:  Your honor, we were put on notice of that, actually quite a while ago, and knew that would touch other bases, the possibility for today, so we do not have any objections.
>
> [Trial Court]:  Okay, and the Court very much appreciates, as always, the candor of [defense counsel].  The Court will grant the motion to amend, and I will state and note for the record that the

parties have shared with me that there's never been any doubt between the parties as to which protection order was in question.

* * * *.

{¶17} Second, appellee moved in limine to exclude evidence that the Mahoning County ex parte protection order was not granted upon a full hearing. The motion was granted over appellant's objection.

{¶18} At trial, appellee presented the testimony of Perkins and Jennifer; appellant was the only witness on his own behalf.

*A Note on the Trial Record: Exhibits*

{¶19} Two exhibits were entered by appellee (and none by appellant). Contained in the record on appeal is a single photocopied sheet bearing photocopied exhibit stickers indicating State's Exhibit A and State's Exhibit B. The images of what appear to be two compact discs appear on the photocopy. Also contained in the record is State's Exhibit C, the Mahoning County return of service which was not admitted into evidence because it was not a certified copy.

{¶20} We note during the witnesses' testimony, these exhibits were not identified for the record.[3] During Perkins' testimony, the transcript indicates "a recording can be heard." (T. 54). Later, Perkins refers to an unidentified recordable CD he presented to the prosecutor's office upon review of the case for a warrant. Perkins testifies about a series of (unidentified) photographs depicting the protection order he looked at on January 6 at Jennifer's residence, including definitions of protected persons and specific

---

[3] Only Exhibit C (the photocopied notices of service from Mahoning County) was identified by Perkins during his testimony but that exhibit was not subsequently entered into evidence upon objection by appellant. (T. 72).

ways in which appellant was ordered not to have contact with Jennifer, including "by communication, an (*sic*) electronic means, too." (T. 57). Another photo, per Perkins' testimony, is of appellant's voice mail message on Jennifer's phone including a time and date stamp. (T. 57).

{¶21} Jennifer testified an "ex-parte temporary order" was granted on December 30, 2013, but she was not asked to identify any exhibits.

{¶22} No exhibits were introduced or identified during appellant's testimony, either, although he made reference to the "two pages" of appellee's Exhibit C. Regarding the existence of the "protection order" and what he received, appellant testified as follows:

> * * * *.
>
> [Defense counsel:] Okay, Michael. Now, in reference to that protection order, there's that long list of rules that Mahoning County would have issued. Did you receive any of those copies?
>
> [Appellant:] No. The reason why was when two sheriffs got to my house to deliver the order, I was not home. My son was there and I was out shopping. * * * *. All I got was two little papers and they said, "We're serving you a protection order (*sic*). No contact with Jennifer and" (*sic*).
>
> [Defense counsel:] When they came with the original order for that protection order, that was for you and your son. Correct?
>
> [Appellant:] Yes, and I was surprised that I was even on it.
>
> * * * *.

[Defense counsel:]  But the officers did not serve you with your copy.  Correct?

[Appellant:]  Just that two little pages.

[Defense counsel:]  And those two pages didn't have any of the rules that you're not allowed…

[Appellant:]  No, none of that big pamphlet, no.

[Defense counsel:]   To not call her or have any other communication with her?

[Appellant:]  No, none of those specifics.

* * * *.

{¶23} Upon cross-examination:

* * * *.

[Prosecutor:]  * * * *.  There's no dispute that there was a protection order issued against you.  Is that correct?

[Appellant:]  I received a protection order.

[Prosecutor:]  Okay.  And there's no dispute that the sheriff served a protection order on you?

[Appellant:]  Yes, I received one.

[Prosecutor:]  And there's no dispute that you called Jennifer during the term of that protection order.  Correct?

[Appellant:]  There's no dispute.

* * * *.

{¶24} Upon redirect, appellant testified he never received a "full copy of the protection order," instead, he received "two little papers."

{¶25} Appellee's Exhibits A and B were admitted without objection. Appellant objected to appellee's Exhibit C because it was neither an original document nor a certified copy, and the trial court declined to admit it into evidence.

{¶26} Appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A) at the conclusion of appellee's case. The motion was not renewed at the close of all of the evidence.

{¶27} Appellant was found guilty as charged and was sentenced to his choice of 8 days in jail or 24 days on electronically-monitored house arrest. He was also ordered to complete anger management counseling and to have no contact with Jennifer.

{¶28} Appellant now appeals from the judgment entry of his conviction and sentence.

{¶29} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶30} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶31} "II. THE TRIAL COURT'S RULING TO EXCLUDE RELEVANT EVIDENCE OF THE CIVIL PROTECTION ORDER'S SUBSEQUENT DISMISSAL IS AN ABUSE OF THE COURT'S DISCRETION."

**ANALYSIS**

I.

{¶32} In his first assignment of error, appellant argues his conviction is against the manifest weight and sufficiency of the evidence.  We disagree.

{¶33} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.  The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶34} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered."  *State v. Thompkins*, supra, 78 Ohio St.3d at 387.  Reversing a conviction as being against the manifest weight of the

evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶35} Appellant failed to renew his Crim.R. 29(A) motion at the close of all of the evidence. An appellant must renew the Crim.R. 29 motion for acquittal at the close of appellee's evidence to preserve the right to appeal on the basis of the sufficiency of the evidence. *State v. Faggs*, 5th Dist. Richland No. 08-CA-35, 2009-Ohio-1758 at ¶ 22; see also, *State v. Barcharowski*, 5th Dist. Stark No. 2002CA00119, 2003-Ohio-4281. Otherwise he has waived all but plain error regarding a sufficiency argument. In order to find plain error, Crim. R. 52(B) requires that there be a divergence from a legal rule, that the error be an "obvious" defect in the trial proceedings, and that the error affect a defendant's "substantial rights." *Faggs*, supra, 2009-Ohio-1758 at ¶ 22, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Reversal on grounds of plain error is to be granted "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage" of justice. Id*.*

{¶36} Appellant was found guilty of one count of violating a protection order pursuant to R.C. 2919.27(A)(1), which provides "[n]o person shall recklessly violate * * * the terms of [a] protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code." The issue this case presents is whether appellee failed to establish the element of "[a] protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code" when the protection order itself was not entered into evidence. We hasten to emphasize it would be better practice to enter the protection order into evidence.

{¶37} Nevertheless, based on the record in this case, including appellant's repeated acknowledgments of the existence of a protection order, we find his conviction is not against the manifest weight of the evidence; these are not the exceptional circumstances in which a manifest miscarriage of justice has occurred and there is no plain error with regard to the sufficiency of the evidence. We limit this case to its unique facts and note appellant has provided us with no authority supporting reversal of his conviction on a trial record such as this.

{¶38} Appellant argues appellee failed to establish any protection order issued pursuant to R.C. 2919.26 or R.C. 3113.31 was issued. We find appellant's repeated acknowledgment of the existence of a protection order relevant. We note no objection was raised to appellee's amendment of the charge from a violation of R.C. 2919.27(A)(2) to one of R.C. 2919.27(A)(1). Defense trial counsel acknowledged no objection was raised because the parties were put on notice of the type of protection order at issue "a while ago," and the trial court emphasized on the record no question ever existed as to what type of protection order was at issue in the case. Reversing the conviction on the basis of questioned existence of a protection order would sanction invited error. Under the doctrine of invited error, a party cannot take advantage of an error the party invited or induced. *State v. Torrence*, 5th Dist. Stark No. 2003-CA-00115, 2003-Ohio-4188, ¶ 48, citing *State ex rel. Soukup v. Celebrezze*, 83 Ohio St.3d 549, 550, 1998-Ohio-8, 700 N.E.2d 1278.

{¶39} We also note appellant states: "[Perkins] photographed the protection order paperwork including the page with names listed. [ ]. These records were not clear in the photograph and could not be read in court. [ ]. The trial court later excluded

these photographs in their entirety because of the lack of clarity. TR at 72-73." (Brief, 6).  In fact, pages 72 and 73 of the trial record establish appellee's exhibits A and B (Perkins' recordings and photos transferred onto CDs) were admitted into evidence without objection.  It was appellee's Exhibit C, the Mahoning County paperwork regarding service of the protection order, which was excluded on the grounds it was neither original nor certified.  T. 72-73.

{¶40} Finally, appellant premises much of his argument here on his testimony at trial that he only received "a couple of pages" of the order which "did not include any of the rules which he was required to follow."  No exhibits were offered by appellant indicating what he received, and throughout his testimony he seemed to be referring to appellee's Exhibit C, the service paperwork.  This argument goes to the relative credibility of the witnesses which is for the finder of fact, but we find the jury could reasonably find appellant knew he was ordered not to contact Jennifer by any means.  Appellant admitted to Perkins he knew he was not supposed to have contact with Jennifer; his removal of items from the Mahoning residence had been accomplished with a police escort who mediated a discussion about the terms of the parties' living arrangements; he acknowledged officer who served him with the order told him "no contact with Jennifer;" and finally, he testified he was "pretty upset" when he discovered the heat off and the condition of the lizards, prompting the call to Jennifer.  (T. 79).

{¶41} Finally, we find that in light of appellant's acknowledgment he knew he was not supposed to have any contact with Jennifer, calling her more than once on January 6, 2014 was reckless pursuant to R.C. 2919.27(A)(1).  A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a

known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist. R.C. 2901.22(C). Appellant was reckless with respect to the terms of the protection order when he called Jennifer repeatedly.

{¶42} In short, we find appellant's conviction upon one count of violation of protection order is not against the manifest weight of the evidence. Nor is there plain error, based upon this record, as to the sufficiency of the evidence.

{¶43} Appellant's first assignment of error is overruled.

II.

{¶44} In his second assignment of error, appellant argues the trial court should have permitted him to introduce evidence the ex parte civil protection order was later dismissed. We disagree.

{¶45} The admission or exclusion of relevant evidence is a matter left to the sound discretion of the trial court. Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). In order to find an abuse of discretion, the reviewing court must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶46} It is not evident in the record whether, or why, the ex parte protection order was terminated, or whether the circumstances of the termination have any

relevance to the instant case. Appellant made no proffer of evidence establishing the circumstances surrounding the alleged termination and therefore nothing in the record suggests an abuse of discretion by the trial court. The termination was argued when appellee raised the motion in limine, but appellant made no proffer, beyond counsel's arguments, establishing how or if this occurred. A motion in limine is a "tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of [an] evidentiary issue." *State v. Grubb*, 28 Ohio St.3d 199, 201-02, 503 N.E.2d 142 (1986). Further, "the granting of a motion in limine does not relieve opposing counsel of the burden of making a proffer of the evidence when the issue becomes ripe for consideration during the course of the trial." Id.

{¶47} We find no basis to conclude the trial court abused its discretion and appellant's second assignment of error is overruled.

**CONCLUSION**

{¶48} Appellant's two assignments of error are overruled and the judgment of the Alliance Municipal Court is affirmed.

By: Delaney, J. and

Hoffman, P.J.

Farmer, J., concur.